SCANLAN v. SAN FRANCISCO AND SAN JOAQUIN VALLEY RAILWAY COMPANY.

Sac. No. 393; December 23, 1898.

55 Pac. 694.

**Judicial Notice—Mathematics.**—Under Code of Civil Procedure, section 1875, subdivision 8, authorizing courts to take judicial notice of the laws of nature, the court judicially knows the rules of mensuration by which the cubic contents of an irregular prismoidal body are ascertained.

**Contracts—Engineer's Estimate.**—Where a Contract for Constructing a Railroad embankment provided that additional dirt, not exceeding a certain quantity, should be added for shrinkage, the exact percentage to be specified by the company's engineer, and that payment for such embankment should be made by measurement of the material in the embankment, excluding that added for shrinkage, the amount designated by the engineer to be added for such shrinkage up to the limit specified is conclusive, even though the shrinkage be less.

**Contracts.**—Where the Construction of a Railroad Embankment was to be paid for by an actual measurement of the cubic contents of the embankment, and the contractor completed it without making a survey or objecting to the one made by the company's engineer, his neglect to make such survey before the surface of the ground, which was one of the necessary data for the measurement, was covered, was an admission that the company's survey was correct.

APPEAL from Superior Court, San Joaquin County.

Action by A. V. Scanlan against the San Francisco and San Joaquin Valley Railway Company. From a judgment for plaintiff and from an order denying a new trial defendant appeals. Reversed.

E. F. Preston for appellant; Gould & Bogue and Woods & Levinsky for respondent.

VAN FLEET, J.—This is an action, brought by a contractor for the construction of a railway embankment to recover the contract price for the alleged cubic contents of the embankment. The defendant had paid to the plaintiff what it claimed to be the whole amount earned, except about $20, which it brought into court. The plaintiff had judgment for the balance claimed by him, and the defendant appeals.

The contract, among other things, contained the following provisions: "On embankments a percentage for shrinkage must be added to the fill, and said percentage will be as specified and marked out by the engineer [of the company], but will in no case exceed ten per cent of height of bank." "Material will be measured in embankment, but no measurement will be made of the material added for shrinkage, nor payment made for same." Under this contract it was incumbent upon the plaintiff to prove the cubic contents of the material placed by him in the embankment, measured in the embankment, excluding the material added for shrinkage. The plaintiff produced as a witness an engineer, who testified that he had measured the embankment after its completion, and had found it to contain a certain number of cubic yards, which he stated; but he did not give the data upon which his computations (for he testified to two) were based. In his measurements and computations he made no allowance for any material added for shrinkage; nor did plaintiff in any way prove how much had been so added, though it was admitted that such additions had been made. The witness testified that his computations were made by measuring a certain number of cross-sections, finding the average area of these cross-sections, and multiplying this average area by the length of the embankment. One of the computations submitted by him was based entirely upon his own measurements, and the other, which was much less, upon the measurements of the defendant's engineer, except as to the heights, as to which the witness used his own measurements. The court, in its findings, adopted neither of these computations, but fixed the amount at an intermediate figure, for which we are unable to find

any basis in the evidence. We think that there was no evidence before the court by which the contents of the embankment could be ascertained. The finding depends entirely upon the accuracy of the computations made by plaintiff's engineer, since the measurements themselves were not before the court, and it is evident that these computations were inaccurate.

1. The court takes judicial notice of the laws of nature (Code Civ. Proc., sec. 1875, subd. 8), among which are the principles of mathematics. The science of mensuration, which must control in this case, is a branch of pure mathematics, with which the court is presumed to be acquainted. By the rules of mensuration, the contents of an irregular prismoidal body, such as a railway embankment, is ascertained by dividing it by vertical planes at every change of contour of the underlying ground into a series of prismoids, and computing the contents of each of these prismoids by adding together its two end areas and four times its middle area, dividing this sum by six, and multiplying the quotient by the length of the prismoid. The product will be the actual contents of the prismoid: See Enc. Brit., 9th ed., art. "Mensuration." This method was not employed by the witness. His method was an approximation, which assumes that the middle area of a prismoid is equal to half the sum of its end areas. This is true only in the case of a prism, or in a prismoid consisting of the frustum of a regular pyramid. This approximation, it is true, will give results correct enough for practical purposes in very uniform embankments, where there is but little difference in height. But in other cases its results are always too large, and it would be easy to suppose cases in which the excess would be greater than the difference between the estimates of the respective parties in this case.

2. The plaintiff's computations made no allowance for the additional earth put on for shrinkage. It is true that there was some testimony tending to show that at the time of the measurement the embankment, to use the words of respondent's brief, "had settled or shrunk nearly, if not quite, all it would." This testimony was entirely too indefinite to take the place of actual measurement, to which defendant was entitled under the contract. Moreover, it did not reach the point; for the amount to be added for shrinkage,

under the contract, was to be determined, within certain limits, by the defendant's engineer, and within those limits his judgment was conclusive, even if the shrinkage should turn out to be less than he had allowed for.

3. The plaintiff's engineer, working as he did after the embankment had been constructed, did not know the original condition of the ground; and, in order to supply that essential factor, he made certain assumptions, which may or may not have been justified by the facts, but which the evidence does not show to have been so justified. We do not think, however, that any such assumptions are allowable under this contract. Since the work is to be paid for by actual measurement, and the original surface of the ground is one of the necessary data for such measurement, the builder, if not satisfied with the survey made by the company's engineer, should, before commencing work, have that survey corrected, or make an accurate one for himself. A neglect to do this is equivalent to an admission of the correctness of the company's survey. The plaintiff should, therefore, have proved that survey; but he did not do this, and objected to the proof of it offered by defendant, and it was not in evidence in the case.

We would suggest that upon another trial of the case each side should put in evidence the measurements upon which any computation offered by it is founded, unless such proof is waived by the other side. If the measurements are before the court, errors in computation can be corrected.

Our conclusion upon this point renders it unnecessary to notice the other points made. The judgment and order appealed from are reversed and the cause remanded for a new trial.

We concur: Harrison, J.; Garoutte, J.