[Sac. No. 1963. Department One.—August 28, 1913.]

## HARRY J. GRAY, Respondent, v. E. J. COTTON et al., Appellants.

CONTRACT FOR PUBLIC WORK—AMOUNT OF COMPENSATION—CERTIFICATE OF ENGINEER.—A provision in a contract for work that the amount to be paid shall be determined by the estimate or certificate of an engineer is valid, and in the absence of fraud or mistake, the estimate or certificate of such engineer is conclusive upon both parties.

ID.—SEWER CONSTRUCTION—SUBCONTRACT—REFERENCE TO SPECIFICATIONS OF CITY ENGINEER—COMPENSATION.—Where the plans and specifications for the construction of a trunk line sewer and lateral main sewers provide that the city engineer shall have full charge of the work and make final measurements and estimates, a subcontract to do the necessary excavating and back filling "in accordance with plans and specifications as prepared by city engineer" makes such plans and specifications a part of the subcontract, and the subcontractor becomes entitled to payment for only such excavation as is shown necessary by the estimates of the engineer, irrespective of the amount of actual excavation.

ID.—PAYMENT FOR EXCAVATION—AMOUNT OF EXCAVATION CONTEMPLATED BY SPECIFICATIONS.—If such plans and specifications provide that "where the diameter of the trunk line sewer is twenty-seven inches or over excavation will be paid for by the cubic yard, the estimate to be made only for the volume included within lines drawn vertically from the ground surface to the exterior surface of the sewer at the springing line and between lines forming the exterior dimensions of the sewer below the springing line," and the sewer exceeds such diameter, the right to payment is limited to the amount of excavation thus indicated.

ID.—AMOUNT OF EXCAVATION ACTUALLY MADE—COMPENSATION.—But where the specifications provide that "the cost of all excavation of sewers twenty-four inches in diameter or less shall be included in the price per foot of completed sewer," the subcontractor is entitled to payment for the amount of excavation actually and properly done by him.

ID.—EXCAVATION IN EXCESS OF THAT REQUIRED BY SPECIFICATIONS—EVIDENCE OF NECESSITY.—But where the subcontractor seeks to recover for excavating a trench wider than required by the specifications, it is incumbent on him to show that the width to which he dug was reasonably necessary to the proper doing of the work.

ID.—EVIDENCE OF AMOUNT OF EXCAVATION.—In an action by the subcontractor to recover for his work, he may testify to the total num-

ber of yards excavated in each of the branches of the work, this being a question of fact.

APPEAL.—REVERSAL OF JUDGMENT IN PART.—The practice of reversing a judgment in part only is well settled in this court, and should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action.

APPEAL from a judgment of the Superior Court of Sacramento County. P. J. Shields, Judge.

The facts are stated in the opinion of the court.

White, Miller & McLaughlin, and. C. E. McLaughlin, for Appellants.

A. M. Seymour, and J. W. S. Butler, for Respondent.

SLOSS, J.—Defendants, copartners under the firm name of Cotton Brothers & Co., entered into a contract with the city of Sacramento whereby they agreed to construct a main sewer and laterals in said city. The plaintiff is a subcontractor who entered into an agreement with the defendants whereby he undertook to do the excavation and back filling necessary for such sewers.

This action was brought to recover the balance claimed to be due under such subcontract, together with certain other sums claimed to be due for extra work done, and damages alleged to have been occasioned by the defendants' failure to do certain things which they agreed to do.

The plaintiff claimed on account of excavation and back filling done under the agreement $2,993.70; for extra work in digging a subdrain two thousand dollars; for extra work in excavating for sheet piling two thousand dollars; and for like extra work in digging sumps four hundred and eighty dollars.

The court found in favor of the plaintiff on these items, amounting in all to $7,473.70, and rendered judgment in his favor for this amount. From this judgment defendants appeal. The findings were against the plaintiff on the items of damage claimed by him and these matters, therefore, present no question to be considered on this appeal.

The specifications under which the defendants were to do the work for the city are attached to the complaint. They show that the work consisted of furnishing the requisite labor and materials and constructing a trunk line sewer along certain streets in the city of Sacramento and ten lateral sewers. The trunk line sewer was divided into eleven sections. The first four sections and five lateral sewers are those involved in the contract between the parties to this action. The specifications contained the following clauses bearing upon the controversy before us:

"The city engineer shall have full charge and superintendence of the proposed work, set off stakes indicating line of grade and extent of work, make final measurements and estimates and in case of dispute as to the intent or meaning of these specifications, his interpretation shall be final.

"Excavations shall be made along the lines shown on plan and to the depth necessary for constructing the sewer at the grade indicated on profile. For all vitrified iron stone pipe sewers and re-enforced concrete pipe sewers twenty-four (24) inches in diameter they shall be at least one foot wider at the bottom than the outside diameter of the pipe, and for the re-enforced monolithic concrete and plain monolithic concrete sewers as wide as the greatest external horizontal width of the structure to be placed therein, without any undercutting of the banks . . .

"The contractor shall provide all sheathing, rangers and braces necessary to prevent caving of banks or settlement or disarrangement of any telephone conduits, gas or water-pipes, . . . and shall pump, bail, drain or otherwise prevent water from running or accumulating in the trenches while the foundation is being constructed or while concrete or pipe is being laid. . . .

"Where the diameter of the trunk line sewer is twenty-seven (27) inches or over, excavation will be paid for by the cubic yard, the estimate to be made only for the volume included within lines drawn vertically from the ground surface to the exterior surface of the sewer at the springing line and between lines forming the exterior dimensions of the sewer below the springing line. The cost of all excavation of sewers twenty-four (24) inches in diameter or less shall be included in the price per foot of completed sewer."

The agreement between the plaintiff and the defendants was in the form of a written offer by plaintiff, accepted by the defendants. The material parts of this writing read as follows:

COTTON BROS. & COMPANY,
    Oakland, Cal.
Gentlemen:         .

I hereby agree to furnish the necessary plant, teams and machinery to do all the excavation and back filling necessary for trunk line sewer and lateral main sewers on the contracts as awarded you by the city of Sacramento in accordance with plans and specifications as prepared by city engineer at the rate of forty cents per cubic yard; it being understood that you are to do all necessary pumping and cribbing. The approximate estimate of excavation is 40,000 cu. yds. more or less. . . .

"Payments to be made at the rate of seventy-five per cent monthly upon engineer's estimate. Balance upon completion and acceptance of each section by the city.

"It is distinctly understood that time shall be of the essence of this contract and all must be prosecuted diligently.

            "Respectfully submitted,

                "HARRY J. GRAY.

"Accepted: COTTON BROS. & Co."

The first count of the complaint alleged, and the court found, that in pursuance of said agreement the plaintiff excavated and back filled on sections 1, 2, 3, and 4 of the trunk line sewer 14,937 cubic yards of earth, and on the five lateral sewers 9,906.3 cubic yards of earth, making a total of 24,843.3 cubic yards. At the agreed rate of forty cents per cubic yard the amount due for these items was $9,937.32, of which it is alleged and found only $6,943.62 has been paid, leaving a balance of $2,993.70. The appellants attack these findings, their position being that the specifications above quoted were expressly referred to and made a part of the contract between the plaintiff and defendants, and that under these specifications the defendants were entitled to claim from the city, and the plaintiff was entitled to claim from the defendants, payment for such excavation only as was shown by the estimates of the city engineer. It appears that the city engineer had made an estimate of 14,238.43 cubic

yards for the excavation on main line sewer, and that he
estimated the excavation necessary for laterals at 7,515.5
cubic yards. The position of the respondent is that, under
his agreement, he was entitled to forty cents for each cubic
yard of earth which he actually excavated, irrespective of
the estimate of the city engineer.

There can be no doubt of the validity of a provision in a
contract for work that the amount to be paid shall be deter-
mined by the estimate or certificate of an engineer or other
person agreed upon. (*Holmes* v. *Richet,* 56 Cal. 309, 313,
[38 Am. Rep. 54]; *Loup* v. *California Southern R. R. Co.,*
63 Cal. 97; *Cox* v. *McLaughlin,* 63 Cal. 196 207; *City Street
Imp. Co.* v. *Marysville,* 155 Cal. 427, [23 L. R. A. (N. S.)
317, 101 Pac. 308].) In the absence of averment and proof
of fraud or mistake, the estimate or certificate of such en-
gineer is conclusive upon both parties.

It seems entirely clear to us that by the agreement between
the plaintiff and the defendants the provisions of the speci-
fications relative to the engineer's estimate were incoporated
into the contract between the plaintiff and the defendants
and were made binding upon the plaintiff to the same extent
that such provisions were binding between the defendants
and the city of Sacramento. The plaintiff undertook by his
writing the "excavating and back filling necessary for trunk
line sewer and lateral main sewers . . . *in accordance with
plans and specifications as prepared by city engineer. . . .*"
This reference adopted the plans and specifications and made
them, so far as they were applicable, a part of the plaintiff's
contract. There is no room for the contention that the
amount of excavation to be paid for was not thus included.
It was one of the matters covered by the specifications and
was incorporated just as other relevant portions of the speci-
fications were. That this was the intent of the parties is
made more evident by the later clause, "payments to be
made at the rate of seventy-five per cent monthly upon en-
gineer's estimate. Balance upon completion and acceptance
of each section by the city." This clause shows plainly that
the parties were looking to the engineer's estimate as fixing
the amount of excavation upon which payments were to be
computed. Seventy-five per cent, as shown in that estimate,
was to be paid monthly and the "balance" (which could

mean only the remaining twenty-five per cent) was to be paid upon completion and acceptance of each section by the city.

The portion of the main line sewer embraced within the first four sections varied in diameter from forty-two inches to sixty inches, and, therefore, exceeded at all points a diameter of twenty-seven inches. With reference to sewers of this size the specifications provided in plain terms that excavation was to be paid for by the cubic yard, the estimate to be made only for the volume included within lines drawn vertically from the ground surface to the exterior surfaces of the sewer at the springing line and between lines forming the dimensions of the sewer below the springing lines. Under this specification it was entirely immaterial whether or not the contractor excavated more earth than that included within the lines so specified. The extent of excavation so defined was contemplated as necessary by the terms of the contract, and payment was to be limited to it. Furthermore, the amount of excavation was, under the provision relating to engineer's estimates, to be conclusively fixed by such estimate. For excavation of main line sewer the plaintiff was, accordingly, limited to the amount shown by the engineer's estimate, and the finding, in so far as it shows an excavation of a greater amount, is not sustained by the evidence.

A different situation is presented with respect to excavations for lateral sewers. None of these sewers exceeded a diameter of 24 inches. The provision of the specifications was that "the cost of excavations of sewers twenty-four (24) inches in diameter or less shall be included in the price per foot of completed sewer." In making their bid, therefore, the defendants were called upon to name a gross price per foot which should cover excavation, as well as all other elements included in the laying of a completed sewer. It is true that the specifications provided a minimum width of excavation, but so long as this minimum was reached the extent of excavation was a matter of entire indifference to the city. It was not obliged to pay separately for such excavation whether it exceeded the minimum or not. The only duty cast upon the engineer in this respect was to see that the trenches were of the width required by the specifications. It was no part of his duty to estimate the number of cubic

yards excavated in digging trenches for these laterals. Any estimate of such yardage would have had no value or effect in determining the price to be received by Cotton Bros. & Co. It follows, therefore, that no such estimate was contemplated by the specifications, and that the plaintiff, in agreeing to do the excavation necessary for such laterals at a price of forty cents per cubic yard, was entitled to receive payment for the amount of excavation actually and properly done by him.

The finding that the plaintiff excavated 9,906.3 cubic yards of the lateral sewers in pursuance of his agreement is, however, attacked by appellants on another ground. It is claimed that there is no sufficient evidence to show, either that he handled the number of yards stated or that such amount of excavation was necessary or proper for the laying of said lateral sewers. The finding is in large part based upon the testimony of Mr. Butler, a civil engineer. He figured the amount of excavation, not from an inspection of the actual work done, but from data derived as follows: The depth of the trench was taken from the profiles in the city engineer's office. The width was figured by adding to the diameter of pipe one foot in each direction from the inside wall of the pipe. Thus, for an eighteen inch pipe, inside measurement, the width taken for computation was three feet six inches; for a sixteen inch pipe, three feet four inches; for a twelve inch pipe, three feet, and so on. These widths were the result of a suggestion made to Mr. Butler by the plaintiff. The plaintiff's own testimony regarding the width to which the trenches were in fact dug was not very clear, but was probably such as to justify a conclusion that all the trenches for laterals had been dug to a width of one foot on each side from the inner surface of the pipe. But, assuming that this is a fair construction of the testimony, we are not referred by respondent to any evidence, and have been able in our own reading of the record to discover none, tending to show that it was reasonably necessary or proper to excavate to the width indicated. It goes without saying that the plaintiff, even though he were not bound by the engineer's certificate, was not authorized to excavate to any extent he pleased, and collect from defendants for the amount actually excavated, regardless of the necessity for excavating such amount.

His contract was to do the "excavating and back filling *necessary* for trunk line sewers and lateral sewers." Where he sought to recover for excavating a trench wider than was required by the specifications, it was incumbent on him to show that the width to which he had dug was reasonably necessary to the proper doing of the work. This showing was not made, and the finding that 9,906.3 cubic yards were excavated on laterals in pursuance of the agreement is, therefore, not sustained by the evidence.

Included in the sum for which plaintiff recovered judgment were, as has been stated, an item of two thousand dollars for digging a subdrain, one of two thousand dollars for excavation necessary to install sheet piling, or cribbing, and one of four hundred and eighty dollars for digging sumps. These items may be treated togther, as they involve substantially the same considerations.

The specifications required the contractors to "provide all sheeting, rangers and braces necessary to prevent caving of the banks or settlement or disarrangement" of pipes or conduits, and to "pump, bail, drain or otherwise prevent water from running or accumulating in the trenches while the foundation is being constructed or while concrete or pipe is being laid." Any excavation which the original contractors might have to do to carry out these obligations was, under the terms of the specifications relative to excavation, necessarily at their own cost and could furnish no basis for a charge against the city. The digging of the subdrain and of the sump holes was done in order to enable the defendants to comply with their obligation to pump, bail, drain, or otherwise prevent water from running or accumulating in the trenches. Similarly, additional excavation for sheet piling—a term synonymous with "sheeting" or "cribbing"—was done in the performance of their agreement to "provide all sheeting, rangers and braces necessary . . ." If the subcontract with plaintiff had been silent on these subjects, there would be much force in the appellant's claim that the incorporation of the specifications into the subcontract imposed upon plaintiff the duty of doing all the excavation necessary in connection with the construction of the sewers, including the items under discussion, and that he would be limited, so far, at least, as the trunk line sewers are concerned, to the yardage included

within the lines fixed by the specifications and estimated by the engineer. But the contract between the plaintiff and the defendants expressly provided that the latter were "to do all necessary pumping and cribbing." If the pumping and cribbing involved excavation, as in fact they did, that excavation was excepted from the work which plaintiff agreed to do. His undertaking was to do the excavating necessary for the sewers in accordance with the plans and specifications. The plans and specifications contained nothing which required the digging of subdrains or sump holes or of excavations for sheet piling, except as such digging might be made necessary in carrying out the provisions for keeping the trenches free of water and for bracing to prevent caving. What, if any, pumping or cribbing would be required could not be determined until the work was actually in course of execution. We think the reasonable interpretation of the subcontract was that adopted by the trial court, viz., that the excavation done in connection with the items now under consideration was incidental to the work of pumping and cribbing, and that, inasmuch as pumping and cribbing were agreed to be performed by the defendants, they were bound to do any excavating which was needed to enable them to carry out this portion of their agreement. Any excavation of this character done by plaintiff was, therefore, properly treated as extra work, not included in the provisions of the written contract. There was evidence to warrant the conclusion that the excavation for which plaintiff claimed payment under these items was ordered to be done by defendants. No price having been fixed, plaintiff was entitled to recover the reasonable value of the work, and there was testimony supporting the conclusion that such reasonable value, in each instance, amounted to the sum allowed by the court. We cannot agree with appellants' contention that error was committed in permitting the plaintiff to testify to the total number of yards excavated in each of these branches of the work. This was a question of fact, and testimony concerning it was proper. *Scanlan* v. *San Francisco & S. J. Ry. Co.*, 6 Cal. Unrep. 210, [55 Pac. 694], relied on by appellants in this connection, hardly sustains the contention made. But, even if it did, it was a department decision, which never became final, but was vacated by an order directing a hearing in Bank. The court in Bank sub-

sequently reached a different conclusion from that announced in department. (*Scanlan* v. *San Francisco & S. J. Ry. Co.,* 128 Cal. 586, [61 Pac. 271].)

Various other rulings on the admission of evidence are assigned as error. The points so made do not require specific notice. Most of them turn upon the question whether the engineer's estimate of the amount of excavation was binding upon the plaintiff. The foregoing discussion of this, which is really the main question in the case, will serve as a sufficient indication of our views on these assignments. Under these views, none of the rulings discussed in the appellants' brief, except those connected with the excavation of the trunk line sewer, was erroneous.

The result may be summarized as follows: On the excavation embraced in the first count, the evidence does not sustain the findings. The finding that, pursuant to the agreement, plaintiff excavated on sections 1, 2, 3, and 4 of the trunk line sewer 14,937 cubic yards is contrary to the evidence, because the amount stated is in excess of the engineer's estimate, which is conclusive. The finding that on the lateral sewers plaintiff excavated 9,906.3 cubic yards is not sustained by evidence of the extent to which excavation was reasonably necessary.

The findings on the other elements of recovery, i. e., excavation for subdrain, for sheet piling and for sumps are sustained by the evidence, and are not affected by any substantial error.

While the judgment must be reversed, there is no occasion to order a retrial of the issues which have already been correctly determined. The practice of reversing a judgment in part only is well settled in this court (*Fox* v. *Hale & N. S. M. Co.,* 108 Cal. 369, [40 Pac. 308] ; *Fox* v. *Hale & N. S. M. Co.,* 5 Cal. Unrep. 980, [53 Pac. 32] ; *Fox* v. *Hale & N. S. M. Co.,* 122 Cal. 219, [54 Pac. 731]), and should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action. Such partial reversal will accordingly be ordered here.

The judgment is reversed, and the cause remanded, with directions to the trial court to retry the issues presented by the first cause of action set up in the amended complaint and the answer thereto, and thereupon to enter judgment in favor

of the plaintiff for the amount, if any, found due on said cause of action, together with the amounts already found to be due plaintiff on the second, third, and fifth causes of action set up in the amended complaint.   Such judgment shall include interest at the legal rate on the said amounts so due to plaintiff on the second, third, and fifth causes of action from the twenty-ninth day of April, 1911, the date of the judgment here appealed from.

'Angellotti, J., and Shaw, J., concurred.