[Sac. No. 4129. Department One.—March 13, 1929.]

F. E. STERRETT, Respondent, v. THE CURTIS CORPO-
RATION (a Corporation), Appellant.

Everts, Ewing, Wild & Everts, L. W. Young and A. W. Carlson for Appellant.

H. B. McClure for Respondent.

SEAWELL, J.—Plaintiff, F. E. Sterrett, an olive grower, and defendant, The Curtis Corporation, engaged in the business of processing and canning olives and other fruits and vegetables, entered into a written contract on August 31, 1925, whereby plaintiff agreed to sell to defendant and defendant to buy the entire crop of Sevillano olives grown during the 1925 season on plaintiff's ranch, situate near Lindsay, at the price of $300 a ton. One truckload of olives from plaintiff's ranch was received at defendant's packing plant at Long Beach in November, and two truckloads in December, the last delivery being received on December 23d. Defendant claimed that it was not liable for more than 3,806 pounds of the total crop of olives delivered to it, on the ground that the balance, totaling more than 12,000 pounds, was frosted and bruised and not in a condition fit for canning. Plaintiff claimed that at least ninety per cent of the crop was in good condition and met the requirements of the contract, and sued to recover for said ninety per cent at the contract rate of $300 a ton. The court below upheld plaintiff's contention and entered judgment for him for $2,314.50, from which defendant takes this appeal.

The case involves a question as to the effect to be given a provision of the contract between plaintiff and defendant which was as follows: "For the purpose of ascertaining the amount to be paid, the sorting and grading and weighing of olives sold under this agreement shall be done by the company at its factory, or at a branch thereof. The company agrees to send written report to the grower upon ascertaining the weight and quality of olives received under this agreement, and the company's report so sent shall be conclusively deemed correct, as to the quantity and

quality, unless the grower within ten (10) days after the sending of such report notifies the company in writing of his dissent, specifying the particulars wherein he dissents. But the grower or his representatives shall be given free access to the grading, sorting and weighing rooms of the company at such times as olives sold under this agreement are being graded, sorted or weighed.''

The contract also provided that the grower should follow the direction of the company in caring for and packing the olives.

Mr. Rowe, the manager of the fruit and vegetable department of defendant, testified that he wrote to plaintiff concerning the poor condition of his olives in December, 1925, and plaintiff called at the plant shortly thereafter, but he, Rowe, did not see him. The olives were weighed and graded in March or April. According to Rowe, a written report showing the weights and grades of the three deliveries, from which it appeared that more than three-quarters of the olives were below standard and unfit for use, was mailed to plaintiff on May 7, 1926. Plaintiff admitted having read said report and stated that he received it either directly from the defendant corporation or from said corporation through his attorney. On June 19th, defendant mailed a check for $428.17 to plaintiff's attorney in payment of three-fourths of the contract price of all olives meeting the requirements of the contract according to defendant's report of May 7th. Said check was returned to defendant in a letter from plaintiff's attorney dated June 23d, in which said attorney stated that inasmuch as defendant's letter of June 19th indicated that there was no prospect of a satisfactory adjustment of the account, Mr. Sterrett had instructed said attorney to commence suit.

It is defendant's contention that plaintiff cannot here be permitted to dispute the correctness of the report of May 7th, for the reason that the evidence shows that plaintiff did not dissent in writing or at all from defendant's said report until June 23d, and this date was far beyond the ten-day period within which plaintiff was required by the terms of the contract to object in writing or be bound by said report as a conclusive statement of the quantity and quality of the olives.

The contract also provided that one-fourth of the purchase price of said olives was to be paid within sixty days after the last delivery of olives and an equivalent amount every sixty days thereafter until the entire amount was paid, from which it would follow that it was defendant's obligation to weigh and grade the olives to eliminate those which were not up to the standard required by the contract and to determine the total price within sixty days after the date of the last delivery, which was on December 23d, and that defendant was in default in failing to send a statement of qualities and weights to plaintiff until May 7, 1926, more than two months after the sixty-day period had elapsed. Having itself violated the obligation imposed upon it by not sending the report to plaintiff until it was long overdue, defendant was not in a position to insist upon a strict compliance with the provision of said contract under which plaintiff forfeited his right to dispute the correctness of said report unless written objection thereto was made within ten days. In failing to take steps to weigh and grade the olives and send a report to plaintiff until long after the time therefor had elapsed, defendant must be deemed to have consented to allow plaintiff a similar indulgence in the matter of objecting to said report, at least in the absence of express notification that it intended to hold plaintiff to a strict compliance therewith, and is estopped from complaining of said delay. If it was impractical to weigh and grade the olives until a later date, defendant should have stipulated for a longer time in the contract or thereafter have negotiated for an extension.

Having concluded that plaintiff is not bound in this action to accept the report of May 7th as a conclusive statement of the weight and quality of the olives for which he is entitled to be paid, the question remaining for consideration is whether there is support in the evidence for the court's finding that plaintiff used great care in picking, sorting and packing the olives and in shipping the same, and if said olives were injured or unfit for canning when they reached defendant's plant such injury was caused by the acts of defendant. Defendant cannot claim a reduction in the amount due plaintiff on account of olives which it rendered unfit for use.

Employees at defendant's plant testified that they found the olives, upon arrival at the plant, soft, wrinkled, shriveled, rotten and in a very bad condition which gave every indication that they had been bruised and affected by frost. Plaintiff and witnesses who testified on his behalf stated that there had been no frost sufficient to cause injury to the olives, and that the olives were picked carefully and packed properly and in excellent condition, showing no indication that they had been bruised or frozen, from which it would follow that if the olives were in a deteriorated condition when they arrived at the plant, plaintiff was not responsible therefor. The olives were transported in trucks hired by defendant corporation.

■ Although some of the olives were picked in bags or sacks, rather than in boxes or pails, in violation of defendant's written instructions given to plaintiff, there was no departure from defendant's instructions in any other particular, and there was evidence that it was possible to pick olives in bags without bruising them, and that plaintiff's olives were not bruised. If said olives were not in fact bruised, the failure to comply with said regulation, established to insure a freedom from bruises, would be immaterial to plaintiff's right to recover for all sound olives. Besides the contract was not repudiated *in toto* by appellant on the ground that sacks rather than boxes were used as picking containers.

Defendant supplied plaintiff with the salt to be used in the solution in which the olives were packed in barrels, also supplied by defendant, and plaintiff followed the instructions of defendant as to the use of said salt. Plaintiff introduced evidence sufficient to prove that the olives would be rendered commercially valueless if barreled in a salt solution as strong as that in which plaintiff placed his olives at defendant's specific direction. While witnesses for defendant denied that there was any permanent injury due to an excess of salt, there was at most a conflict in the evidence, which was resolved in plaintiff's favor by the trial court.

■ Defendant having failed to furnish any statement of the weight and quality of the olives except the statement showing grades and weights after a large proportion of the olives had deteriorated by reason of the treatment

given them at the direction of defendant, plaintiff was entitled to introduce evidence as to the weight of the olives when sound and to recover on the basis of said weight. The sum which plaintiff sued for and recovered in the court below allows for a ten per cent deduction to cover the percentage of culls normally found in a shipment of sound olives.

Judgment affirmed.

Curtis, J., and Preston, J., concurred.