WENZEL & HENOCH CONST. CO. v. METROPOLITAN WATER DIST. OF SOUTHERN CALIFORNIA.

No. 9091.

Circuit Court of Appeals, Ninth Circuit.
Oct. 15, 1940.

Rehearing Denied Nov. 27, 1940.

E. R. Young, W. H. Wadsworth, and John H. Mathews, all of Los Angeles, Cal., for appellant.

James H. Howard, Gen. Counsel, Arthur A. Weber, Asst. Gen. Counsel, and Charles C. Cooper, Jr., Frank G. Finlayson, James S. Bennett, and H. T. Morrow, all of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Wenzel & Henoch Construction Company, hereinafter called Company, appeal from a judgment of the District Court in favor of the Metropolitan Water District of Southern California, hereinafter called District, in a suit arising out of appellant's work in constructing the San Jacinto Tunnel.

As a part of the Colorado River Aqueduct project it was necessary for appellee, the District, to have a tunnel constructed through San Jacinto Mountain in Southern California. Before issuing specifications and calling for bids for the construction of this tunnel, the District had made a geological study and report. Core drilling was done and an exploratory drift was made at the West portal. The information thus gained was used as the basis for a report as to what the probable conditions of work would be. Both the information and the report were made available to bidders with a provision of the contract later considered protecting the District from a claim that the report is its representation of the existing conditions.

The specifications, as advertised, and as later embodied in the contract, called Public Works Contract, contained a clause, § 7, providing that if at any time the Chief Engineer of the District should be of the opinion that the performance of the contract was unnecessarily or unreasonably delayed, the Chief Engineer, acting on behalf of the District, might by written notice instruct the contractor to discontinue all work under the contract or any part thereof. In any such case the District might take charge of the work and complete it by a new contractor or by force account. In so doing, the District was empowered to take possession of and use any of the materials, plant, tools, equipment, supplies and property of every kind provided by the contractor for the purposes of his work. It was further provided that when any particular part of the work was being carried on by the District, under the provisions of this clause, the contractor should continue the remainder of the work in conformity with the terms of his contract, and in such manner as in nowise to hinder or interfere with the persons or workmen employed by the District to do any part of the work.[1]

---

[1] "7. Suspension of contract.—If the work to be done under the contract shall be abandoned by the Contractor or if the Contractor shall make a general assignment for the benefit of his creditors, or be adjudicated a bankrupt, or if a receiver of his property or business be appointed by a court of competent jurisdiction, or if this contract shall be assigned to him otherwise than as hereinbefore specified, or if at any time the Chief Engineer shall be of the opinion that the performance of the contract is unnecessarily or unreasonably delayed, or that the Contractor is wilfully violating any of the conditions or covenants of the contract, or of the specifications, or is executing the same in bad faith or not in accordance with the terms thereof, or if the work be not fully completed within the time named in the contract for its completion, or within the time to which the completion of the contract may have been extended as hereinbefore provided, the Chief Engineer, acting on behalf of the District, may by written notice instruct the Contractor to discontinue all work, or any part thereof, under this contract.

"(b) When such written notice is served upon the contractor, as hereinafter provided in Section 8, he shall immediately discontinue the work or such part thereof as is covered by the notice, and shall not resume the same except by written instructions from the Engineer. In any such case the District may take charge of the work and complete it by a new contract or by force account. In so doing, the District may take possession of and use any of the materials, plant, tools, equipment, supplies, and property of every kind provided by the Contractor

Under the circumstances outlined, the Company bid upon the work and was found to be low bidder. Thereupon, for the purpose of establishing the financial responsibility of the Company, a contract referred to as the Supplemental Agreement was negotiated and subscribed by the parties concurrently with the execution of the "Public Works Contract."

By the terms of this Supplemental Agreement the Company was required to establish and maintain a construction fund of $250,000 to which should be added all progress payments made by the District to the Company. Against this fund could be charged money expended in the purchase of materials and supplies and in the payment of labor costs for the work to be done under the "Public Works Contract." Any difference of opinion as to the propriety of charging a given item against the fund was to be finally determined by the Chief Engineer of the District. The Company covenanted to restore to the fund upon request any money improperly charged against the fund and the District was authorized to withhold sufficient money falling due under the public works contract in an amount equal to any depletion in the event of the Company's refusal to make the demanded restoration.

The Company commenced construction but from the beginning delays occurred in the progress of the work because the conditions under which the work was performed were much more difficult than had been anticipated when the time for completion had been agreed. There was also evidence that the Company's methods of meeting the unexpected difficulties were not of the needed and practicable engineering requirements. On December 3, 1934, the District's engineer notified the Company that the work was unnecessarily and unreasonably delayed and that unless progress improved by January 15, 1935, the District would take over the work.

On January 9, 1935, the District, by letter, notified the Company that, according to information available to the District, the construction fund had been depleted in an amount exceeding the progress payment next due, and advised that it was the intention of the District to withhold payment of the December progress payment pending receipt of the full information called for by the notice.[2]

Finally, on January 15, 1935, the District's engineer issued his opinion that the work was unnecessarily and unreasonably delayed and instructing the Company to discontinue all work under the contract. De-

for the purposes of his work. The District may procure other materials and provide labor for the completion of the same, or contract therefor and charge the expense of the same, or contract therefor and charge the expense of completion by either method, to the contractor. These charges shall be deducted from such moneys as may be due or may at any time hereafter become due the Contractor under and by virtue of this contract, or any part thereof. And in case such expense shall exceed the amount which would have been due the Contractor under the contract if the same had been completed by him, he shall pay the amount of such excess to the District; and in case such expense shall be less than the amount which would have been payable under this contract if the same had been completed by the Contractor, he shall have no claim to the difference; and when any particular part of the work is being carried on by the District, by contract or otherwise, under the provisions of this section, the Contractor shall continue the remainder of the work in conformity with the terms of his contract, and in such manner as in nowise to hinder or interfere with the persons or workmen employed, as above provided,

by the District, by contract or otherwise, to do any part of the work, or to complete the same under the provisions of this section."

2 "Jan. 8, 1935
"Wenzel & Henoch Construction Company
"Beaumont, California
"N. W. D. Contract No. 36
"Gentlemen:

"The supplementary agreement dated March 17, 1933, between your corporation and the District made in connection with the above contract, requires the establishment and maintenance of a construction fund. Pursuant to the provisions of said agreement we now call upon you for a complete and detailed statement as to the status of the said construction fund in such form and substance as will permit the District to fully analyze the account and determine the present status thereof. Such account should be in detail sufficient to enable the District to classify all expenditures made from such fund and determine the propriety thereof.

"According to the most recent information and account available to the District the fund has been depleted in an amount in excess of that represented by the esti-

mand was made for the possession of all property being worked and all materials and equipment used in such work.[3] Upon the Company's refusal, a suit was brought by the District to secure possession of the tunnel. The Company was successful in resisting the District's application for an injunction pendente lite; the District thereupon took possession of the tunnel and appellant's plant and equipment on February 12, 1935.

The Company brought a suit for specific performance of the contract to require possession to be restored to it. That suit was dismissed upon motion of the District on March 11, 1935.

This suit was brought against the District on January 8, 1937, on three counts: (A) Damages for breach of express contract; (B) In quantum meruit for value of materials furnished and work done independent of express contract; and (C) Money had and received.

Pursuant to stipulation, the trial court ordered the issue of liability of the District to be tried first, the issue of damages to be tried in the event that liability should be established. The court found against the Company on all three counts and ordered judgment accordingly.

### A. The Company Not Entitled to Recover for Breach of an Express Contract.

The Company's theory of recovery under the first count is that both the service upon it of the notice of suspension of work of January 15, 1935, and the subsequent ejectment of the Company on February 12, 1935, from the works were unauthorized acts of actual prevention of performance, either of which constituted a final breach of the contract warranting a recovery on the basis of a prevented full performance.

■ The opinion of the District's Chief Engineer that the work on the tunnel was unnecessarily and unreasonably delayed was final and conclusive upon the Company in the absence of fraud. American-Hawaiian Engineering & Construction Co. v. Butler, 165 Cal. 497, 504, 513, 133 P. 280, Ann.Cas.1916C, 44; Connel v. Higgins, 170 Cal. 541, 150 P. 769; Gray v. Cotton, 166 Cal. 130, 136, 134 P. 1145; Martinsburg & Potomac R. R. Co. v. March, 114 U.S. 549, 551, 552, 5 S.Ct. 1035, 29 L.Ed. 255; United States v. Gleason, 175 U.S. 588, 607, 20 S.Ct. 228, 44 L.Ed. 284. The finding of the District Court that the opinion was not fraudulent is amply supported by the evidence.

mate next to become due. Pending the receipt of full information as to the status of the fund, you are hereby notified that it is the intention of the District, pursuant to the terms of the said supplementary agreement, to withhold the amount of the next estimate.

"Trusting that the information may be in our hands in sufficient time to enable us to make payment in the event that the depletion of the said fund shall have been corrected, I am,

"Yours very truly,
"F. E. Weymouth
"General Manager and Chief Engineer."

[3] "January 15, 1935
"Wenzel & Henoch Construction Company
"Beaumont
"California
"Gentlemen:

"You are hereby notified that I, as General Manager and Chief Engineer of The Metropolitan Water District of Southern California, am of the opinion that the performance of that certain contract dated March 17, 1933, between your corporation and the said District, wherein you agreed to construct and complete the San Jacinto Tunnel under Colorado River Aqueduct Specifications No. 3, is, at the date hereof, and since the date of the said contract has been, unnecessarily and unreasonably delayed.

"Therefore, acting on behalf of the District, and pursuant to the said specifications, I hereby instruct you, as contractor, under said contract, to discontinue all work under said contract. The District will forthwith take charge of all of the work and will take possession of and use all of the materials, plants, tools, equipment, supplies and property, of every kind provided by you for the purposes of your work. Demand is hereby made therefor and for the possession of all lands, shafts, adits, tunnels and other locations whereon said work is being prosecuted, and that way be made for the occupancy by employees and agents of the District; provided that in discontinuing the said work you are directed to continue to operate all pumps and pumping equipment necessary or convenient to prevention of damage by water, until representatives of the District are actually in control of and in a position to continue without interruption the operation of such pumps and pumping equipment.

"Yours very truly,
"F. E. Weymouth
"General Manager and Chief Engineer."

The Company contends that the District did not have the right to suspend the work because:

(1) The District by its own acts was estopped to assert that the Company had unreasonably and unnecessarily delayed the work of construction of the San Jacinto Tunnel.

(2) The District by misrepresenting the physical conditions to be encountered in performing the work was precluded from legally terminating the contract on the ground of unreasonable delay.

(3) The District by withholding the December progress payment on January 9, 1935, breached the contract and while the District was thus in default, it could not take over the work under section 7 of the contract.

The first contention, that of estoppel, which the Company seeks to raise is based on a previous certificate executed by an engineer of the District on December 25, 1934, as follows: "I certify that the materials have been received by me in good condition and in the quantity and quality specified, or the work performed as stated; that the stipulations of the contract and specifications have been complied with; and that there is now due upon this claim the amount stated, no part of which has been paid."

That this certificate does not raise the estoppel charged is apparent from the provisions of the contract, numbers 37 and 38, that false or erroneous certificates of completion of work should not estop the District from showing the true condition of work and that acceptance of work by the District would not act as a waiver of any requirement of the contract.[4]

Under these contractual provisions, the issuance and payment by the District to the Company of the progress estimates contained the foregoing certificate raised no estoppel against the District and constituted no waiver of its right. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 307, 27 S.Ct. 535, 51 L.Ed. 811, 10 Ann.Cas. 572; General Fireproofing Co. v. L. Wallace & Son, 8 Cir., 175 F. 650, 653, certiorari denied 217 U.S. 607, 30 S.Ct. 697, 54 L.Ed. 900; see Monson v. Fischer, 118 Cal.App. 503, 518, 519, 5 P.2d 628.

The second contention, that of misrepresentation of the physical conditions of work to be encountered in performing the work, is based on the provisions of the geological report setting forth the probable conditions of work and the provisions of the specifications with regard to the materials probably needed. This claim of misrepresentation is unsupportable. This court in Six Companies of California v. Joint Highway District No. 13, 9 Cir., 110 F.2d 620, 623, held that such reports and specifications do not constitute a warranty or representation of the existence of the conditions as represented by such reports in the presence of an exoneration clause.[5]

---

[4] "37. False or erroneous certificates.— Neither the District, nor any officer thereof, shall at any time either before or after the final completion and acceptance of the work and payment therefor pursuant to any return or certificates made or given by the Chief Engineer or any other engineer, or other officer, agent or appointee of the District under any provisions of this contract, be precluded or estopped by any such return or certificate from showing the true and correct amount and character of the work done and materials furnished by the Contractor or any other person under this agreement, or from showing at any time that any such return or certificate is untrue and incorrect or improperly made in any particular, or that the work and materials, or any part thereof do not in fact conform to the specifications; and the District shall not be precluded or estopped, notwithstanding any such return or certificate and payment in accordance therewith, from demanding and recovering from the Contractor such damages as it may sustain by reason of his failure to comply with the specifications.

"38. Acceptance of work not a waiver.— Neither the acceptance of the District or its Engineer, or any of its employees, nor any order, measurement, or certificate by the Engineer, nor any payment of money by the District, or any of its officers, nor any payment for, nor acceptance of the whole or any part of the work by the Chief Engineer or the District, nor any extension of time, nor any possession taken by the District or its employees, shall operate as a waiver of any portion of this contract or of any power herein reserved to the District, or any right to damages herein provided; nor shall any waiver of any breach of this contract be held to be a waiver of any other or subsequent breach."

[5] Paragraph B-6 of the Instructions to Bidders provided: "B-6. Local Conditions.—Bidders shall read the specifications, examine the drawings, and make

The present case comes within the rule laid down in the Six Companies case, supra.

The third contention is that the District could not give its notice of suspension and taking over of the work because the District was guilty of a prior default in withholding the December progress payment due January 9, 1935. The public works contract provides in sections 32 and 33 for the payment of partial estimates "in order to assist the Contractor to prosecute the work advantageously." Estimates for the period May 15, 1933, to November 25, 1934, totaling $1,081,568.85, were paid to the Company. The monthly estimate for the period November 25, 1934, to December 25, 1934, was, under the terms of the contract, due and payable to the Company on January 9, 1935. At that time there had been no suspension of the contract and the Company was still engaged in the work. Prior to January 9, 1935, the monthly estimate for the aforesaid period had been prepared and certified by the District's engineers as correct and due and that the stipulations of the contract and the specifications had been complied with.

The delivery of the letter on January 9,[6] the day the estimate was due and payable, declaring that it was the intention of the District to withhold the amount of the December progress payment pending the receipt of full information as to the status of the construction fund required to be set up under the terms of the supplementary agreement, and the action of the District in withholding this payment are relied upon by the Company as a breach of contract by the District. From that time on, the Company claims, the District was in default. The argument of the Company continues: "Appellee having thus breached the contract, and having failed and refused to pay appellant the December estimate, even though such failure was promptly called to its attention, was in default under the contract and could not require appellant to perform it. Therefore the demand of January 15, 1935, by the General Manager and Chief Engineer of appellee, that appellant forthwith deliver up possession of the tunnel works together with its plant, tools and equipment to appellee, was a nullity which appellant was justified in disregarding. Undoubtedly the act in serving this notice of January 15, 1935, upon appellant, while appellee was already in default under the contract, constituted a second breach of the contract in the nature of prevention of performance. Appellant again could have abandoned the work and sued appellee for damages for prevention of performance of the contract, and also in quantum meruit for the value of its services and materials furnished. It did not immediately choose to take this course of procedure, but promptly protested the giving of such notice of January 15, 1935, and again called appellee's attention to the fact that appellee had first breached the contract by its failure to pay appellant its December estimate."

their own estimates of the existing facilities and the difficulties which will attend the execution of the work called for by the proposed contract, including local conditions, uncertainty of weather and all other contingencies. Bidders shall satisfy themselves by personal examination of the location of the proposed work, and by such other means as they may choose as to actual conditions and requirements and as to the accuracy of the quantities stated in the Bidding Sheet. Information derived from the maps, plans, specifications, profiles or drawings or from the Chief Engineer or his assistants shall not relieve the bidder of this responsibility, and the interpretation of the data disclosed by borings or other preliminary investigations is not guaranteed by the District. The quantities of work or material stated in the Bidding Sheet are given only as a basis for the comparison of bids, and the District does not expressly or by implication agree that the actual amount of work or material will correspond therewith, but reserves the right to increase or decrease the amount of any item of work as may be deemed necessary or expedient by the Engineer. Bidders shall not at any time after the submission of a bid make or have any claim for damages or anticipated profits or loss of profit or otherwise because of any difference between the quantities of work actually done and material furnished and those stated in the Bidding Sheet."

The Contract, paragraph 18(a) of Specifications 3 provided: "The Contractor shall bear all losses resulting to him on account of the amount or character of the work, or from any unforeseen obstructions or difficulties which may be encountered, or from any encumbrances on the line of the work, or because the nature of the ground in or on which the work is done is different from what is assumed or was expected, or on account of the weather, floods or other causes, * * *."

6 Footnote, 2 supra.

It is not necessary to determine the merits of the contention that the District was in default by reason of its withholding of the December progress payment. Assuming, for the purposes of this decision, that there was a breach of the covenant to make an installment payment, we cannot agree that this, of itself, was a breach of the entire agreement frustrating any further rights of the District under it. The Company does not contend that the withholding of the December progress payment prevented the performance of the contract. Whether or not it warranted a rescission by the Company, the Company admits no such rescission was attempted prior to the Engineer's decision that the Company had unnecessarily and unreasonably delayed the work.

The act of the District in suspending the work for unnecessary and unreasonable delay was pursuant to the provisions of section 7 of the contract[7] and was not converted into an act of abandonment by the District as a result of the alleged prior breach of January 9 in withholding the December progress payment. The ejectment of the Company from the works was not in contravention of the contract as it was merely the exercise of its right under the contract to possession of the works. The Company's cause of action under the first count, based as it is on prevention of performance of the contract, is predicated on the theory that the contract had an existence after the alleged breach of January 9. Since the contract continued in existence, the Company was not relieved from the duty of performing its obligations to surrender possession in accordance with its terms. Dyer Bros. G.W. I. Works v. Central Iron Works, 72 Cal.App. 202, 207, 237 P. 386; Weber Chimney Co. v. Itasca Paper Co., Mo.Sup. 1917, 199 S.W. 141, 143.

Other California cases upon which the Company relies are not in opposition to this rule of law. In San Francisco Bridge Co. v. Dumbarton Land & Improvement Co., 119 Cal. 272, 51 P. 335, suit was in quantum meruit after a contract for the performance of the work had been duly rescinded because of defendant's breach. Likewise, in Gray v. Bekins, 186 Cal. 389, 199 P. 767, suit was in quantum meruit and not for recovery on the express contract. The holding of the court in Sterrett v. Curtis Corp., 206 Cal. 677, 680, 275 P. 792, that

the failure of the defendant to act with the promptness required by the contract raised a waiver of the usual condition that time is of the essence is not authority for raising a waiver of other and different elements of a contract from the fact of the breach of one condition or covenant therein. Nor does it follow from the rule that "one party cannot compel another to perform while he himself is in default under the contract" (Rathbun v. Security Mfg. Co., 82 Cal.App. 793, 796, 256 P. 296, 297) that, if the injured party decides to stand upon the contract, he is relieved of the obligation of performing according to the terms of the contract.

There is language in the case of Henderson Bridge Co. v. O'Connor, 88 Ky. 303, 11 S.W. 18, 22, 957, subsequent appeal, sub nomine, O'Connor v. Henderson Bridge Co., 95 Ky. 633, 27 S.W. 251, 254, 983, which appears to support the Company's contention. The court, in the second appeal, however, clarified its position by stating (27 S.W. 254): "Besides, upon reconsideration, we think that as the company [here the District] was in default, by reason of failure to estimate and pay for work done and materials delivered, without which the contractors could not further comply with and perform all the terms of the contract, it had no right to annul [here take over the work]."

As so qualified by the court, this rule does not support the Company's claim of recovery in the instant proceeding. The Company at no time contended that the failure to make payment of the progress payment on January 9, 1935, was responsible in any way for the delay in proceeding with the work.

B and C. The Company Not Entitled to Recover on the Count in Quantum Meruit or that for Money Had and Received.

There remains for consideration the Company's claim that the District Court improperly denied it judgment on the second and third counts for recovery aside from the contract. In addition to the acts of the District in giving the notice of suspension and ejecting the Company from the works, the Company relies upon the act of the District of January 9, 1935, in withholding the December progress payment as supporting its suit in quantum meruit.

---

[7] Footnote, 1 supra.

Although under the California rule in building contracts the failure to pay an installment when due is not such a breach as will support an action on the contract for full performance, it will support a rescission of the contract and recovery in quantum meruit. Cox v. McLaughlin, 54 Cal. 605, 608, 609, 610; Cox v. McLaughlin, 76 Cal. 60, 62, 63, 18 P. 100, 9 Am.St. Rep. 164; Porter v. Arrowhead Reservoir Co., 100 Cal. 500, 502, 503, 35 P. 146; San Francisco Bridge Co. v. Dumbarton Land & Improvement Co., 119 Cal. 272, 274, 51 P. 335; see Fairchild-Gilmore-Wilton Co. v. Southern Ref. Co., 158 Cal. 264, 274, 110 P. 951, and Connel v. Higgins, 170 Cal. 541, 150 P. 769, 772; Monson v. Fischer, 118 Cal.App. 503, 519, 5 P.2d 628. Rescission of the contract in such case, however, must be within a reasonable time of the breach. Cal. Civil Code, § 1691; Brown v. Domestic Utilities Mfg. Co., 172 Cal. 733, 736, 159 P. 163; Bancroft v. Woodward, 183 Cal. 99, 107, 108, 190 P. 445; Davis v. Rite-Lite Sales Co., 8 Cal.2d 675, 682, 67 P.2d 1039.

Assuming that it was still reasonable for the Company to elect to rescind the contract because of the alleged breach of January 9, 1935, after the District had served its notice of suspension of work under the contract and had ousted the Company from the work, the fact remains that such an election was never made.

On February 18, 1935, the Company brought a suit in equity for specific performance of the contract to require possession to be restored to the Company, in an attempt to regain possession of the tunnel so that it might continue the work. Following the dismissal of this suit upon motion of the District on March 11, 1935, the Company took no further action with respect to the contract until January 8, 1937, when the case at bar was filed. The first amended complaint, on which trial occurred, was filed May 24, 1937. By neither of these pleadings did the Company allege that it had abandoned the contract or had rescinded it. The Company offered no proof at the trial that it had in fact rescinded the contract and, in the face of the record, the trial court's finding that no rescission occurred cannot be set aside. Hollenbach v. Schnabel, 101 Cal. 312, 35 P. 872, 873, 40 Am.St.Rep. 57; Cf. Palmer v. Fix, 104 Cal.App. 562, 567, 286 P. 498, hearing denied by Supreme Court.

The Company seeks to bring itself within the doctrine of election of remedies by which the injured party may wait until the time of trial before electing between the right to recover in quantum meruit for the work done or on the contract for full performance. Adams v. Burbank, 103 Cal. 646, 649, 37 P. 640; House v. Piercy, 181 Cal. 247, 251, 183 P. 807; Restatement of the Law of Contract, § 381. The election presented in this case, however, is one of substantive rights rather than remedies: to rescind the contract and recover on the common counts for work performed or to stand on the contract and waive the breach, demanding full performance.

Not only was there a failure on the Company's part to rescind within a reasonable time but there was a change of position which would render it inequitable to allow the Company to recover on the basis of a contract rescinded as of the date of the present suit. From a consideration of section 7 of the contract,[8] it appears that the acts complained of did not effect a complete termination of the contract but only a suspension of the work under that contract. Certain obligations of appellant continued under the contract after the notice of suspension. If the expense of the work after the notice of suspension exceeded the amount which would have been due the Company under the contract if the same had been completed by it, the Company was under the obligation to pay the amount of such excess to the District. Further, all the Company's material and plant equipment were subject to use by the District without additional compensation.

The continuing nature of the Company's obligations under the provisions of section 7 is similarly illustrated by the terms of the notice of suspension given in this case.[9]

If the Company at this late date can recover in a suit in quantum meruit, grounded on a breach of contract which invested it with an election to rescind, the District would be liable for the use of the Company's equipment and plant material after the date of the notice of suspension or of the ouster from possession of the equipment and works. The failure of the Company to make a timely rescission would thus redound to its benefit and the prejudice of the District. Every justification here exists for enforcing the requirement that rescission for breach of contract be within a reasonable time of the breach.

---

8 Footnote, 1 supra.

9 Footnote, 3 supra.

Since the action of the District in retaking possession of the work was pursuant to the contract and any right of the Company to rescind the contract because of the alleged breach of the District in withholding the December progress payment was lost by the Company's failure to give notice of rescission within a reasonable time of the date of the withholding, judgment in the District Court on the issue of liability was properly for the District.

The Company assigns as error the action of the District Court in admitting the testimony of the District's accountants as to the status of the construction fund and in refusing to allow the Company to amend its first amended complaint so as to charge a breach of warranty and misrepresentation of the conditions of work. Consideration of these assignments of error is unnecessary under the views postulated above. The error, if any, could not be prejudicial.

The judgment is affirmed.

Affirmed.