[Civ. No. 2213.    Second Appellate District.—March 8, 1917.]

ALBERT SIMMONS et al., Copartners, etc., Respondents, v. EMIL FIRTH, Appellant; BUILDING CON-TRACTORS SUPPLY COMPANY (a Corporation), et al., Respondents.

MECHANIC'S LIEN—FORECLOSURE—ENGINEER'S CERTIFICATE—PLEADING—OMISSION TO ALLEGE—LACK OF PREJUDICE.—In an action by original contractors to enforce a mechanic's lien for an unpaid balance alleged to be due them upon a contract for the construction of a concrete reservoir, the defendant is not prejudiced by an error in overruling his demurrer to the complaint for uncertainty, in that it failed to make any reference to the engineer's certificate of completion of the reservoir required by the contract as a prerequisite condition to plaintiffs' right to final payment, or to allege any excuse for not producing the same, where it appears from the evidence received without objection that such certificate was refused upon the ground that plaintiffs had not, as alleged by them, completed the reservoir in accordance with the terms of the contract and performed all the conditions thereof.

ID.—COMPLETION OF WORK—TRIVAL OMISSIONS.—In the construction of a concrete reservoir at an agreed price of $5,995, the omission of five items called for by the specifications of the aggregate cost of $62.85, is trivial, and cannot be deemed to constitute such a lack of completion as to prevent the filing of liens.

ID.—DEFECTS IN CONSTRUCTION—FAULTY SPECIFICATIONS—CONTRACTORS NOT RESPONSIBLE.—In the construction of a concrete reservoir the contractors are not to be held responsible for leakages in the reservoir or for defects in the construction of the roof thereon, where the walls and roof of the reservoir were constructed in strict accordance with the plans and specifications furnished by the owner's engineer.

ID.—DELAY IN COMPLETION—FAILURE OF OWNER TO SUPPLY WATER—ESTOPPEL.—In such an action the owner is estopped from contending that the plaintiffs failed to complete the reservoir within the contract time, where such failure was due to the failure of the owner to furnish plaintiffs with a necessary supply of water, as provided by the contract.

ID.—CONTRACT FOR CONSTRUCTION OF RESERVOIR—SUPPLY OF WATER BY OWNER—PLACE OF—SILENCE OF CONTRACT—PAROL EVIDENCE ADMISSIBLE.—Where specifications for the construction of a reservoir provide that the owner shall supply the contractors with water for mixing purposes, but are silent as to the place at which the owner is to deliver the water, parol evidence is admissible to show that

it was agreed that the water was to be delivered through a pipe-line then in course of construction, at or near the proposed reservoir site.

APPEAL from a judgment of the Superior Court of Riverside County. F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

Sheldon Borden, and George H. Moore, for Appellant.

Purington & Adair, for Respondents Albert Simmons et al.

George C. Mansfield, Shankland & Chandler, and A. H. Winder, for Respondents Building Contractors Supply Company et al.

SHAW, J.—In this action plaintiffs as original contractors sued to enforce a mechanic's lien for an unpaid balance alleged to be due them upon a contract made with Emil Firth, pursuant to which they constructed a concrete reservoir at an agreed price of $5,995. The defendants other than Firth filed answers and cross-complaints whereby they sought judgment against plaintiffs, and the enforcement of liens upon the same property for materials furnished to plaintiffs as such original contractors for use and used in the construction of the reservoir. After a demurrer interposed by Firth to the complaint was overruled, he filed an answer thereto, which, among other things, contained a counterclaim against plaintiffs for a sum in excess of the amount of plaintiffs' alleged lien, and also filed answers to the cross-complaints. Upon the issues thus joined a trial was had which resulted in a judgment in favor of plaintiffs and against Firth for a balance of $2,259.61, which was declared a lien upon the property described in the complaint, all as prayed for therein, and gave judgment against plaintiffs in favor of cross-complainants, payment of which was ordered to be made from the proceeds of the judgment so rendered in favor of plaintiffs and against defendant Emil Firth.

From the judgment so entered, Firth, adopting the alternative method in presenting the record, has appealed.

Conceding the court erred in overruling defendant Firth's demurrer to the complaint for uncertainty (*Wyman* v.

*Hooker,* 2 Cal. App. 36, [83 Pac. 79]), in that it failed to make any reference to the engineer's certificate of completion of the reservoir required by the contract as a prerequisite condition to plaintiffs' right to final payment, or allege any excuse for not producing the same (*Coplew* v. *Durand,* 153 Cal. 278, [16 L. R. A. (N. S.) 791, 95 Pac. 38], and cases there cited), nevertheless, since it appears from the evidence received without objection that the engineer refused such certificate upon the ground that plaintiffs had not, as alleged by them, completed the reservoir in accordance with the terms of the contract and performed all the conditions thereof, the substantial rights of defendant were not prejudiced by the ruling, without which this court should not reverse the judgment. (Code Civ. Proc., sec. 475; Const., art. VI, sec. 4½.) The issue presented to the court for trial was whether or not plaintiffs in constructing the reservoir had complied with the contract, since if they had, the withholding of the certificate as evidence thereof was unwarranted and want thereof could not be urged as a defense to plaintiffs' right to recover.

Appellant attacks the finding of the court to the effect that, notwithstanding the fact that five items called for by the specifications of the aggregate cost of $62.85 (which the court held to be trivial and an allowance for which was made), were omitted, the reservoir was substantially completed on November 8, 1912, and on November 9th it was occupied and thereafter continually used by Firth. Section 1187 of the Code of Civil Procedure, provides that trivial imperfections in the construction of a building, improvement, or structure shall not be deemed such a lack of completion as to prevent the filing of a lien; and in *Schindler* v. *Green,* 149 Cal. 752, [87 Pac. 626], it is said: "If the omission or imperfection is so slight that it cannot be regarded as an integral or substantive part of the original contract, and the other party can be compensated therefor by a recoupment for damages, the contractor does not lose his right of action." The question is one of fact to be determined by the trial court in each instance from the evidence and circumstances in the case. Compared with the entire structure called for by the contract, it cannot be said upon the evidence presented by the record that these items were other than as found by the court to be trivial omissions for which defendant could be and was compensated in damages. To the same effect are: *Harlan* v.

*Stufflebeem*, 87 Cal. 508, [25 Pac. 686], and *Perry* v. *Quackenbush*, 105 Cal. 299, [38 Pac. 740]. It is also claimed that the reservoir was defective in that it was not impervious to water, but constantly leaked; that the roof thereon constructed by plaintiffs was defectively constructed, by reason of which fact a large part thereof was blown off by the wind some time in December. It appears from the record that at the trial not only the specifications, but detail plans for the construction of the roof were offered in evidence. These plans and details of construction, however, are not brought up in the record, and without them some of the specifications are incomplete. The contention of respondents is that not only the walls of the reservoir, but the roof constructed thereon, were in strict accordance with the plans and specifications, and there is evidence disclosed by the record which clearly tends to sustain such contention. That the walls of the reservoir were not impervious to water, is conceded; but the evidence of experts introduced on behalf of plaintiffs is to the effect that such leakage was due, not to faulty construction, but to the fact that the walls of the reservoir as called for by the specifications were not such as were calculated to render the reservoir impervious to water without the interior thereof being plastered, and that no reservoir built in accordance with the specifications furnished by defendant's engineer would hold water without more or less leakage. That the evidence sustains this contention admits of no doubt. The same observations are true with reference to the alleged defective construction of the roof, which it seems did not blow off until after the completion of the structure and use thereof by defendant. The evidence tends to show that it was constructed in accordance with the detailed plans, not before us, and specifications furnished therefor by defendant's engineer, and that its failure to withstand the force of the wind was due to faulty specifications which did not provide for proper anchorage, and not to failure on the part of the contractors to construct the same in accordance therewith. One of the omissions claimed to exist was the alleged fact that plaintiffs did not install check-valves in accordance with specifications. The specifications refer to detail No. 1 for method of outlet and inlet, and while this detail of plan is not incorporated in the record, we gather from the opinion of the trial judge it described the device as "a 10-inch check-valve or flap-valve."

At all events, plaintiffs called upon the engineer for a design of valve to be used, and he drew a sketch and delineation of a valve the use of which he authorized and in accordance with which plaintiffs had the two valves made and installed the same. These valves, by reason of the leather cushion becoming hard and dry, though constructed as required by the engineer, leaked. But here, again, in the absence of any specifications therefor, plaintiffs appear to have followed the detailed drawing furnished them by the engineer, and having done so, they should not be held responsible for such defect.

Appellant strenuously contends that the evidence was insufficient to justify the finding that the owner occupied and used the reservoir from November 9, 1912. Here again, there appears to be a conflict of evidence; but there is testimony to the effect that defendant did exercise dominion over the reservoir by doing work upon the roof, other than that called for by the specifications, deemed necessary to protect the paper-covering of the same from blowing off in case of storms, and on November 22d filled the same with water; and immediately upon taking possession commenced erecting a fence around the same; indeed, the testimony of defendant's inspector of the work is that he, as defendant's employee, built a fence around the edge of the reservoir, painted the ladders, and did other odd jobs deemed necessary, and filled the same with water to a depth of four or five feet, at which time he observed no leaks other than in the check-valve, designated a flap-valve. It may be conceded that as to all questions of fact submitted to the court for determination, there was a conflict of evidence, a large part of which offered on behalf of defendant was that of the engineer who prepared the specifications and who, very naturally, insisted that if followed they were sufficient for the purpose for which the reservoir was intended. It is likewise clear that the trial court regarded his testimony as unsatisfactory. Without discussing the evidence further, suffice it to say that it is ample to support the findings attacked for want of sufficient evidence.

The contract, dated May 31, 1912, provided that the reservoir should be completed within sixty days thereafter, and one of the grounds of the counterclaim and defense was plaintiffs' failure to comply with this provision. The court, however, held that defendant was estopped from availing himself of such defense for the reason that he neglected and

failed to furnish plaintiffs a supply of water for mixing concrete and mortar. As to this, the specifications contained a provision that, "water for mixing concrete and mortar will be supplied by Emil Firth, the contractor to take same from nearest standpipe or pipe-line." It appears that at the time of entering into the contract, defendant had in course of construction a pipe-line leading from his pumping plant to the site of the proposed reservoir, distant a mile and a half therefrom, a map of which line he at the time exhibited to plaintiffs, and in response to the inquiry as to when he would have the water there, told plaintiffs that it would be within a week, and for them to assemble their tools and material for doing the work, and by the time they were prepared to commence the work he would have the water there; all of which, together with other evidence, tended to show there was an oral agreement made between plaintiffs and defendant Firth whereby the latter was to supply the water, not at the pumping plant, but from a standpipe or pipe-line the outlet of which was to be constructed to a point at or near the proposed reservoir. Appellant insists that the admission of all such evidence was erroneous in that it tended to vary the terms of the written contract. We are not in accord with this contention. While the agreement provided that Firth should supply the water, it is silent as to the point at which he was required to deliver the same; hence the oral agreement covered a subject as to which the contract was silent. In our opinion, it was competent for plaintiffs to show by parol that the water which defendant agreed to supply for use in the construction of the reservoir was to be delivered by him through the pipe-line then in course of construction at or near the proposed site of the reservoir. The written contract contained no provision fixing the point where the water should be delivered; thence the evidence adduced touching a subject as to which the contract was silent did not tend to vary any provision thereof. "The rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument." (*Savings Bank of Southern Cal.* v. *Asbury,* 117 Cal. 96, [48 Pac. 1081]; *Sivers* v. *Sivers,* 97 Cal. 518, [32 Pac. 571]; *Bradford Investment Co.* v. *Joost,* 117 Cal. 204, [48 Pac.

1083] ; *Wolters* v. *King,* 119 Cal. 172, [51 Pac. 35].)  In our opinion, the court did not err in admitting the testimony the effect of which was to show that the delay complained of was due to defendant's failure to deliver a supply of water necessary in the prosecution of the work.

The record discloses no prejudicial error upon which this court would be justified in disturbing the judgment in favor of plaintiffs and against Firth, for which it is declared a lien exists in favor of the former, the foreclosure of which is ordered.

This being true, the alleged erroneous rulings of the court in admitting evidence to sustain the claim of a lien in favor of Hook Brothers for which they were given a judgment against plaintiffs in the sum of $730.61, in no wise concerns appellant, since such judgment is ordered to be paid out of the amount found due to plaintiffs from defendant Firth, for which a lien is declared, and, therefore, conceding the court erred in reaching the conclusion that Hook Brothers were entitled to judgment, defendant is not prejudiced thereby.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.