[Civ. No. 14984. Second Dist., Div. Two. Dec. 4, 1945.]

FIELDING & SHEPLEY, INC. (a Corporation), Respondent, v. R. H. DOW, Appellant.

John E. McCall for Appellant.

George Penney for Respondent.

McCOMB, J.—Defendant appeals from a judgment in favor of plaintiff in the sum of $9,618 after trial before the court without a jury in an action to recover an alleged balance due on a subcontract.

The stipulated facts are these:

"First: That the plaintiff, Fielding & Shepley, Inc., a corporation, poured 124,830 square yards of concrete at the project mentioned in the complaint at the contract price of 69¢ per square yard, or a total amount of $86,132.70; that $76,030.70 was paid by Dow or a credit given. That Dow claims two items of credit, namely, an item of $351.55 for repair of mixer, and $475.00 to clean the concrete from the site which plaintiff denies.

"Second: That the concrete was defective.

"Third: That the United States Government imposed a pen-

alty of $23,700.00 on the defendant under his contract with the Government because of the defective concrete. That the penalty so imposed was in a reasonable amount, and is properly set forth in the percentages as set forth in the Bill of Particulars filed by the cross-complainant.

"Fourth: That Dow furnished all aggregates, weighed and batched the same and delivered the batched materials to the mixer hoppers of Fielding & Shepley, Inc. That Dow thereafter had nothing further to do with the concrete except to protect it against freezing."

Defendant relies for reversal of the judgment on four propositions which will be stated and answered hereunder seriatim:

First: *Plaintiff did not perform its subcontract according to its terms.*

This proposition is untenable. Defendant claims that (1) the specifications required plaintiff to construct the concrete so that it would have a specific minimum compressive strength. Admitting that the compressive tests prepared by the government vary from the compressive strength required by the specifications, nevertheless there was substantial evidence that the difference in compressive strength resulted from impurities in the mix at defendant's batching plant and failure to protect the cement against freezing but permitted the application of salt to the cement which accelerated freezing, from which the trial court impliedly found that the lack of compressive strength was not due to plaintiff's fault.

(2) Contrary to the specifications plaintiff poured cement when the temperature was below 40 degrees. Conceding this to be true there was substantial evidence that defendant knew that plaintiff was so doing and made no objection thereto.

(3) Plaintiff failed to live up to specifications because he failed to take slump tests. There is nothing in the contract between plaintiff and defendant requiring plaintiff to take slump tests himself, while the evidence discloses that slump tests were actually made and defendant did not object to the fact that plaintiff did not take the tests himself or that the tests were unsatisfactory.

(4) The specifications were violated in that calcium chloride was mixed with the cement. The evidence discloses that defendant gave permission to plaintiff to mix calcium chloride with the cement.

(5) The cement was poured during the rain contrary to specifications. The evidence discloses that the spots in the concrete caused by the rain did not cause the government to reject such concrete but that in fact the government accepted it.

(6) Plaintiff did not do certain cleanup work of the value of $475. Such point is immaterial here for the trial court allowed defendant a credit in the sum of $475 on account of the failure of plaintiff to do cleanup work.

(7) Plaintiff used too much water in mixing the concrete. There was testimony given by several witnesses that the correct amount of water was used in the mixing of the concrete, and the trial court was thus justified in finding that an excessive amount of water had not been used in mixing the cement.

*Daley* v. *Russ*, 86 Cal. 114 [24 P.867], and *Kittle Mfg. Co.* v. *Davis*, 8 Cal.App.2d 504 [47 P.2d 1089], cited by defendant, are factually distinguishable from the present case. The first case involved a point in pleading and was not decided on the basis of conflicting evidence. The second case involved an entirely different factual situation from that here presented, the contract in such case being a contract for the exploitation of a patent.

Second: *Plaintiff failed to allege or prove compliance with the conditions precedent in the contract which required that the work should be done to the satisfaction of the contractor and owner before final payment became due.*

This proposition is also untenable. The provision in the contract that the work should be done to the satisfaction of the defendant merely meant that the work should be performed in such a manner that it would be satisfactory to a reasonable person. (*Thomas Haverty Co.* v. *Jones,* 185 Cal. 285, 296 [197 P. 105], *Bruner* v. *Hegyi,* 42 Cal.App. 97, 99 [183 P. 369].) In the present case there was testimony that the work was done in a satisfactory manner. Predicated upon such testimony the trial court properly found that plaintiff had performed the work in a manner satisfactory to defendant.

Third: *There is not any substantial evidence to sustain the trial court's findings that (a) plaintiff performed services for defendant of the agreed value of $86,132.70; (b) there is now due and owing from defendant to plaintiff under the contract $9,618 and that said sum should have been paid by defendant to plaintiff on December 31, 1942; (c) plaintiff completed the work required under the contract in accordance with the plans and specifications of the general contract prepared by the U. S. government; (d) the work was accepted by the defendant; and (e) the penalty of $23,700 imposed by the government was due to no fault in the work done by plaintiff.*

This proposition is likewise untenable.

(a & b) The stipulated facts show that plaintiff poured 124,830 square yards of cement at the agreed price of 69 cents per square yard, which is equivalent to $86,132.70. It is further stipulated that defendant had paid plaintiff only $76,039.70 leaving a balance of $10,093 against which the trial court allowed defendant a credit of $475 making the balance of $9,618.

(c) The discussion under point one, *supra*, shows that there was substantial evidence to sustain this finding.

(d) Subsequent to the doing of the work by plaintiff, defendant took possession of the concrete and erected thereon government structures. Clearly such evidence was sufficient to sustain the trial court's finding that defendant had accepted the work.

(e) There was evidence that the defective work was caused by the defendant's putting salt upon the concrete and driving trucks over it too soon after it had been poured. Such evidence clearly sustained the trial court's finding that the penalty assessed by the government was not due to any fault of plaintiff.

Fourth: *Plaintiff was liable for any penalty assessed against defendant by the government that had to do with the cement poured by defendant.*

This proposition is likewise without merit. The contract merely provided that plaintiff was liable to defendant for the penalty assessed against defendant *"on account of the contractor's" defective work.*

From the foregoing discussion it is evident that the penalty was not assessed on account of the subcontractor's defective work and therefore plaintiff was not liable to defendant for the penalty assessed against him.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.