[Civ. No. 21402.   Second Dist., Div. One.   Mar. 5, 1957.]

C. E. PANCOAST, Respondent, v. GEORGE VERNON RUSSELL, Appellant.

Jerome T. Stewart for Appellant.

Robert E. Burns, as Amicus Curiae on behalf of Appellant.

Philip N. Gepner for Respondent.

DORAN, J.—The respondent Pancoast, desiring to build a house on a ranch near Azusa, contracted with appellant Russell, an architect, to provide "architect's services" including "general supervision of the construction work." The contract further provides that "the architects fee does not include the cost of . . . superintendence by a full time inspector or Clerk of the Works." The contractor was one H. J. Orchard, suggested by plaintiff's brother and unknown to the appellant architect.

It appears that owner Pancoast who had had surveying and engineering experience, was frequently on the building site inspecting the work as it progressed, and made many complaints both to the contractor and to Architect Russell. These complaints related to the manner of pouring concrete, installation of heating ducts, carpenter work, etc. The appellant's statement that Dr. Pancoast objected strenuously to about "everything that was done or was not done" does not seem too much of an exaggeration.

By late September, 1951, relations between the parties had deteriorated badly, whereupon appellant summoned members of the Ethics Committee of the Los Angeles Chapter of the American Institute of Architects to consider respondent's objections. After visiting the premises, certain remedial measures were suggested. The heating ducts, subject of one of respondent's serious objections, could not be examined because of the floor slab. Thereafter, the contractor abandoned the job.

On November 10, 1951, as said in appellant's brief, "plaintiff stated that he would refuse any remedy except complete demolition of the building as constructed and complete reconstruction." Dr. Pancoast thereafter filed complaints with the Ethics Committee of the American Institute of Architects, and likewise with the State Board of Architectural Examiners seeking to have appellant's license revoked. These complaints were dismissed. Thereafter, respondent ceased to confer with appellant, demolished the structure and relet the construction contract.

In February or March of 1952, the dispute between respondent and the contractor was submitted to arbitration with the result that the sum of $2,500 was deducted from the sum found to be due the contractor, leaving a balance due of $11,988.14. The appellant architect was not a party to this arbitration. A judgment confirming the arbitration award was affirmed on appeal. (*Orchard* v. *Pancoast*, 133 Cal.App. 2d 52 [283 P.2d 309].)

Respondent Pancoast's original complaint against Architect Russell sets out the contract, charges fraud and deceit on the part of Russell and alleges the giving of a certificate entitling the contractor to receive an initial payment for construction. The complaint further charges that "defendant, over the protests of plaintiff, permitted substitutions of lumber and material, . . . and approved workmanship . . . of such inferior quality as to greatly weaken said structure," etc. and that the "Los Angeles Building Department condemned a large portion of the foundations." There was a cross-complaint by defendant Russell seeking to recover a balance due of $1,764.25.

A first amended complaint charges the defendant architect with "habitual neglect in the performance of his duties as such architect," particularly with respect to inspection and approval of the contractor's work. A second count alleges breach of the written contract "by failing to provide proper general supervision and by abandoning said project on November 7, 1951, without plaintiff's knowledge or consent and has never returned to complete the same."

The trial court found that "defendant was guilty of neglect in the performance of his duties as such architect"; that the defendant "carelessly and negligently disregarded" plaintiff's protests and "failed to provide proper general supervision of the work." It was found that Dr. Pancoast, the respondent, had been damaged by the defendant's conduct in the sum of $6,000, and that defendant should take nothing by way of the cross-complaint. Judgment was entered accordingly.

It is the appellant's contention that the findings do not support the judgment and are not supported by the evidence; that the trial court should not have found the defendant negligent in supervision and inspection, or that plaintiff was required to raze a portion of the building or remove part of the slab floor. It is also argued that the plaintiff waived any negligence on the part of the defendant by making payment to the contractor with knowledge of alleged defects. The point is also made that "there is no evidence to support the finding that the plaintiff was damaged in the amount of $6,000.00." It is also contended that "The arbitration award rendered as to the dispute between plaintiff and contractor rendered the judgment of the trial court erroneous in law"; that the cause of action for any negligence was barred by the

statute of limitations; and that the trial court erred in denying relief on defendant's cross-complaint.

A careful survey of record and transcript indicates that all of the appellant's assignments of error are without foundation. Much of appellant's brief is concerned with the proposition that judgment and findings are contrary to appellant's interpretation of the evidence, and that the trial court should have arrived at a contrary conclusion.

As pointed out in respondent's brief, it is the rule that findings are to be liberally construed in support of the judgment. Whatever may be the technical defects in the present findings, they are not fundamental in nature, and when construed as an entirety, furnish adequate support for the judgment rendered. Moreover, as said in *Martinez* v. *Martinez*, 41 Cal.2d 704 [263 P.2d 617], any "inconsistency is immaterial since there is sufficient evidence to support a judgment for plaintiff on either theory."

Another fundamental principle brought into play in the instant case is that where findings and judgment are supported by substantial evidence the reviewing court will not attempt to evaluate weight and credibility of the evidence received. Conflicts in the evidence must in such a case be resolved in favor of the judgment rendered. That the record herein does disclose substantial evidence in support of findings and judgment cannot be doubted. While it is true that there is also evidence tending to support a part of appellant's contentions, the existence of such evidence in no manner affects the application of the above rule.

The matter of adequate inspection and supervision on the part of the architect and the interrelated problem of the owner's damages alleged to have resulted therefrom, were disputed questions of fact which the trial court was called upon to solve. Since there is substantial evidence in support of the conclusion that appellant did not properly supervise the work, the appellate court cannot enter upon a retrial of the factual issues.

While it is true that the original complaint stresses the fraud theory, it also alleges that the appellant "permitted substitutions of lumber and material . . . and approved workmanship . . . of (such) inferior quality," etc. Paragraph V of the original complaint charges that the defendant "wilfully, *carelessly* and fraudulently certified to the completion" of a portion of the construction. (Italics added.) In the amended complaint plaintiff omits the fraud charge and relies

upon the architect's dereliction in inspection and supervision. Under the liberal theory of pleading followed in this state, the allegations of the amended complaint cannot be deemed a fatal departure from those in the original.

The rule laid down in *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 717 [128 P.2d 522, 141 A.L.R. 1358], is applicable to the present situation. The Supreme Court there said: "This contention is based upon the theory that the fifth amended complaint charging fraud states a new and different cause of action from that for negligence stated in the original complaint, . . . The modern rule, where amendment is sought after the statute of limitation has run, is that the amended complaint will be deemed filed as of the date of the original complaint so long as recovery is sought upon the same general set of facts. . . . A mere change in legal theory will not subject the amended complaint to the bar of the statute of limitations."

There can be no serious contention that the architect's undertaking was that of an absolute guaranty that satisfactory results would ensue. On the other hand, the term "general supervision," as used in the instant agreement, must mean something other than mere superficial supervision. Obviously, there can be no real value in supervision unless the same be directed towards securing a workmanlike adherence to specifications and adequate performance on the part of the contractor. As hereinbefore stated, whether appellant rendered such a service to the owner was one of the primary factual issues in the case.

Defective performance and violations of plans and specifications were repeatedly pointed out to the appellant and, as found by the trial court, there is evidence indicating that "defendant carelessly and negligently disregarded the protests and objection of plaintiff," and that respondent suffered damage as a result of such conduct. The amount of such damage found by the trial court to be $6,000 was, again, a question of fact. As pointed out in the respondent's brief, other methods of computation might have resulted in a far larger judgment. Appellant's contentions in reference to the amount awarded are untenable.

What has heretofore been said in reference to substantial evidence sustaining the trial court's findings, is likewise applicable to appellant's contention that the court was not justified in finding that respondent was "required to remove the slab

floors and heating ducts," etc., and to install new work. According to one architect witness, encasement was so poor that the witness could reach in and touch the galvanized iron duct between the spaces left between the pours of cement. Another expert witness testified that the only way to remedy the condition was to "pull up the floor or go overhead." The contention is without merit.

The argument to the effect that respondent's payment to the contractor with knowledge of defective conditions, constitutes a waiver of appellant's alleged negligence, cannot be sustained. What apparently happened was that respondent made a payment to the contractor predicated upon the appellant's certification, with the understanding that certain defects were to be corrected, and that subsequent work should be performed in a proper manner. It is to be noted that this payment was brought about, not by respondent's volition but by the act of the appellant whose duty it was to serve respondent's interest by giving adequate supervision. In all this there is nothing in the nature of a waiver.

Nor is there any merit in appellant's insistence that "The arbitration award rendered as to the dispute between plaintiff and contractor rendered the judgment of the trial court erroneous in law"; that such award was res judicata; and that the present judgment allows respondent to "recover double compensation." The present architect-defendant was not a party to the arbitration proceedings between plaintiff and the contractor. As stated in the respondent's brief, "the liability of the Defendant is not derived from the liability of the contractor Orchard. . . . They have no relationship such as master and servant, principal and agent," etc., but were "separate and independent parties in their relationship with plaintiff."

The issues decided in the plaintiff-contractor arbitration were not identical with those presented in the present action between plaintiff and architect. In *Bernhard* v. *Bank of America*, 19 Cal.2d 807 [122 P.2d 892], cited by appellant, this identity of issues is mentioned as a vital element of the doctrine of res judicata. As said in *Alexander* v. *Hammarberg*, 103 Cal.App.2d 872, 882 [230 P.2d 399], "the issues . . . are not identical. . . . The Rahlves case was for damages for breach of a builder's contract, while the instant case is for negligence of the architect in supervising the work."

The findings and judgment of the trial court are adequate

and in accordance with both law and evidence. No reversible error has been shown.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied March 28, 1957, and appellant's petition for a hearing by the Supreme Court was denied May 1, 1957.