[Civ. No. 19083. First Dist., Div. One. Oct. 20, 1960.]

PATRICK J. RUANE, INC. (a Corporation), Respondent, v.
K. E. PARKER, Appellant.

Johnson & Stanton, Gardiner Johnson and Hiram S. Dillin for Appellant.

Lloyd J. Cosgrove and John G. Evans for Respondent.

DUNIWAY, J.—Action for breach of contract. Plaintiff had judgment and defendant appeals. Appellant Parker had the general contract for the construction of the new Hall of Justice and Records Building at Redwood City; respondent ("Ruane") had the subcontract with Parker for the plastering. Although the judgment is for $8,272.01, with interest, no claim of error is made as to $1,204.66 thereof. Error is claimed as to $5,400, representing the cost to Parker of painting exterior stucco, and as to $1,667.35, representing the cost to Parker of patching cracked interior plaster. Parker claims that an arbitration award is determinative in his favor, as to the exterior stucco, and that, as to both items, Ruane pleaded performance, but proved only nonperformance plus an excuse for nonperformance. We have concluded that the judgment must be affirmed.

## THE CONTRACTS

In his subcontract, Ruane agrees to do ". . . in a workman-like manner, as required by and in strict accord with said plans and specifications and details illustrative thereof as approved by the Contractor, and to the satisfaction, of the Contractor, all LATHING AND PLASTERING, i.e., all work outlined in Part 1, Sections 16 and 17 of the Specifications." Ruane also agrees "to prosecute [the work] . . . in full accord with the requirements of the general construction as determined by the Contractor. . . ." Parker has the right, if Ruane fails to perform, to do the work at Ruane's expense. It is further provided that "The Sub-Contractor acknowledges familiarity with the general conditions of the aforesaid specifications and all conditions of the original contract between the Owner and Contractor and agrees to be bound thereby insofar as they are applicable to this particular work; . . ." The subcontract relieves Parker of liability to Ruane for delay, but not from other liabilities.

The material portions of the general conditions of the prime contract are, as to duties of Parker to the owner, to: determine when and where materials and labor will next be needed (9c), coordinate the various types of work and inform subcontractors (9d), notify subcontractors to furnish and set their work in place (9f), safeguard the work against weather, etc. (9$l$), provide needed heat "as necessary to protect all materials against injury from dampness and cold," and specifically, "[f]rom the beginning of the application of plaster and during the setting and curing period, provide sufficient heat to produce a temperature in the spaces involved not less than 50° Fahrenheit" (9n, 2), furnish, for the architect's approval, samples of materials, including "plaster and lathing materials." Such materials are not to be used without the architect's approval (9r, 2 and special conditions, 13a). Subcontracts are to be approved by the architect (10a). "The Contractor shall bind every Sub-contractor, and every Sub-contractor agrees to be bound by the terms of the Contract Documents to carry out their provisions insofar as applicable to their work" (10c), but there is no contractual relation between the subcontractor and the county (10d). The contractor is required to "[d]o all necessary patching of damaged, cracked or defective plaster, leaving all plaster work in perfect condition." (Specifications, § 17-09.)

As to the architect, the entire work is under his jurisdiction. One of his functions is to "pass upon merits of materials and

workmanship." He is "to make written decisions in regard to all claims of the Owner or Contractor and to interpret the Contract Documents on all questions arising in connection with the execution of the work." His decisions or interpretations are subject to arbitration (14, 14b). All material and workmanship are subject to the architect's inspection, and he has "the right to reject defective material and workmanship" or require their correction. Rejected workmanship shall be satisfactorily replaced with proper material without charge (15a). Final payment to the contractor is to be made upon a certification of completion by the architect (17f, g).

### THE PLEADINGS

The complaint alleges the making of the contract in general terms only, and full performance on Ruane's part. The answer admits the contract and denies the allegation of performance. It also pleads in substance, as a separate defense, that a dispute arose as to whether the work had been completed in accordance with "the plans and specifications" and that this matter was submitted to arbitration and decided against Ruane by the arbitrators. These are, on their face, sufficient pleadings (Code Civ. Proc., § 457). It is also true, however, that they successfully conceal the real issues to be tried.

### THE PRETRIAL ORDER

No pretrial order is included in either transcript, but the parties referred to a pretrial order at the trial. Because the pretrial order, "where inconsistent with the pleadings, controls the subsequent course of the case" (rule 8.8, Rules for the Superior Courts), and because Parker's contentions on appeal are based in part on claimed insufficiency of the complaint in relation to the proof, we have on our own motion ordered a copy of the pretrial order made a part of the record on appeal. (*Cf.* the remarks of Ashburn, J., as to our status as *parens patriae* in *Burnstein* v. *Zelman,* 182 Cal.App.2d 1, 2-3 [5 Cal.Rptr. 829].) Unfortunately, the pretrial order contributes nothing to the clarification of the issues or to the solution of the problem relating to the pleadings presented by appellant Parker. It appears to us to be a totally useless document. (*Cf. Arch Rib-Summerbell Steel Fabricators* v. *Lubliner,* 183 Cal.App.2d 593, 595-596 [7 Cal.Rptr. 94]; *Collison* v. *Thomas,* *(Cal.App.) 6 Cal.Rptr. 911.) It quotes

---

*A hearing was granted by the Supreme Court on October 5, 1960. The final opinion of that court is reported in 55 Cal.2d —— [11 Cal.Rptr. 555, 360 P.2d 51].

verbatim the pretrial statements of the parties, which are no more specific than the pleadings, but does not at any point attempt to state, with any particularity or at all, the actual issues to be tried. Had the pretrial judge delved into the matter at all, he could have discovered the true nature of the controversy, settled the issues to be tried, required such amendments to the pleadings as might be required (rule 8.4(a)) and eliminated the contention as to the pleadings now pressed upon us. He did none of these things.

## THE REAL ISSUE

The issues developed at the trial are these: It is conceded that Ruane did all of the work required by the contract, the controversy being only, in the instance of the exterior plaster, as to (a) whether he was bound to repair the defects that admittedly appeared, regardless of their cause, or (b), if not, whether the defects were the result of defects in his work, or (c) whether the arbitration award was conclusive against him; and, in the instance of the interior plaster, (a) whether he was bound to repair cracks that admittedly developed, regardless of their cause, or (b), if not, whether they were caused by Ruane's faulty workmanship or by Parker's improperly heating the building.

## THE FINDINGS

The court found that Ruane performed all the conditions stated in his contract, that the arbitration did not decide the question before the court although Parker told Ruane that the arbitrators would decide it, and that the award does not bind or estop Ruane.

## THE TRIAL

The conduct of the trial was in many respects as informal as the pretrial conference must have been. Ruane's case in chief was very brief. Counsel put in evidence his subcontract with Parker and the specifications of the prime contract. He obtained a stipulation that the building had been accepted by the county and notice of completion filed. He proved that the contract price, under the subcontract, except for the amount sued for, had been paid. Mr. Ruane then testified: "Q. Has all of the work under this subcontract, that is the lathing and plaster work, been performed by your company? A. Yes, sir. Q. And the job to your knowledge has been completed? A. Yes, sir. Q. And a notice of completion has

been filed? A. Yes, sir." On cross-examination, Parker elicited the information that the exterior was repainted before acceptance and that this was not done by Ruane. Counsel then agreed that the arbitration related solely to the exterior plaster, and Ruane rested.

## THE FACTS AS TO THE EXTERIOR PLASTER

Counsel for Parker showed that the architect rejected the exterior plaster or stucco "because of stains, leaching and splotches." He showed that, after the arbitration (to be described in more detail hereafter), Ruane refused to remedy the defects.

In showing the negotiations leading up to the arbitration, Parker offered in evidence, without limiting his offer, a letter from Ruane dated December 14, 1955, in which the latter asserted that the exterior job was done "in accordance with specifications in color and texture as selected by the architect. The materials used were those specified with no deviation from the specifications. The stucco was applied under the inspection of the owner's representative and as each area was completed, was inspected and passed before removal of the scaffold." The latter also asserts that the job was "acceptable to the owners and architect upon completion." A like assertion appears in another letter, dated July 19, 1956, similarly offered by Parker. Having been offered by Parker, without any limitation as to the purpose of the offer, these letters are evidence of the truth of Ruane's statements therein, and may be considered in support of the findings of the court. (*Nelson* v. *Fernando Nelson & Sons*, 5 Cal.2d 511, 518 [55 P.2d 859] ; *Merchant etc. Assn. v. Kellogg Express & Drayage Co.*, 28 Cal.2d 594 [170 P.2d 923].) To that extent, Parker has supplied what might otherwise be a deficiency in Ruane's proof.

When Parker's counsel finished his proof relating to the exterior stucco, it was agreed that Ruane should proceed in rebuttal on that issue. He offered in evidence another letter, dated April 25, 1956, making a similar but briefer assertion. No objection was made.

Ruane points to a statement in one of the architect's letters, offered by Parker and received without limitation or objection, that "[i]t [the leaching, etc.] is all due probably to application of stucco in improper weather conditions," and to testimony of Parker on cross-examination that Parker scheduled

the work that Ruane was to do. Counsel apparently thinks this evidence is a sufficient showing that the defects were caused by improper scheduling by Parker. We disagree. To so hold would stretch the doctrine that a finding must be sustained, if there is any substantial evidence to support it, too far. The evidence as to scheduling is at most equivocal, and in our judgment proves nothing. However, as we shall see, this point is immaterial.

### The Arbitration

The arbitration was handled through the American Arbitration Association, no method being prescribed by the contract. Two of its forms of "submission," almost identical in form, were signed. One, signed by Ruane alone, dated May 19, 1956, reads in material part, as follows:

"Michael Goodman, architect for the Hall of Justice and Records Building, Redwood City, California has rejected the exterior stucco because of stains, leeching [sic] and splotches and has demanded that we remedy the features objectionable to him.

"K. E. Parker maintains that the installation of the exterior stucco was performed in accordance with plans and specifications in first class and workmanlike manner and that the leeching [sic] is something beyond his control, and for which he is not responsible.

"Since a difference of opinion exists regarding the responsibility for this alleged condition, the parties hereto wish to submit the matter of responsibility to arbitration."

The other, signed by Parker and the county, but not by Ruane, dated May 22, 1956, is identical except that, in the first paragraph, the words "we remedy" have been rubbed out and the words "K. E. Parker remedy" have been inserted, and, in the third paragraph, the word "alleged" does not appear. Parker did not present to the arbitrators the "submission," dated May 19, signed by Ruane, although he told Ruane that he would. The court found that this was done secretly, and in violation of Parker's representations to Ruane. Thus there was submitted to the arbitrators only the question of "responsibility" as between the county and Parker. Their award reads: "The responsibility . . . rests with the contractor, K. E. Parker." Following the award, Parker, claiming that the arbitrators had decided against Ruane, demanded that Ruane remedy the defects. He refused to do so, stating, in a letter to Parker: ". . . nowhere do we find that the re-

sponsibility for the deficiency or for remedying the deficiency has been placed specifically against our firm or the work or materials installed by our firm." Parker's position as stated in his testimony is: "No, there was no arbitration with me. I had no arbitration. He had a contract with me to satisfy the architect. There was no arbitration between Mr. Ruane and I."

### THE FACTS AS TO THE INTERIOR PLASTER

On this issue, the parties are in agreement that both "normal" and "abnormal" cracking developed. It is also agreed that Ruane did considerable patching of cracks. The evidence as to when the "abnormal" cracking developed, and what caused it, is in sharp conflict. The evidence favorable to Ruane, which we must accept on this appeal, indicates that the lathing and plastering were properly installed, in a good and workmanlike manner, and in accordance with the plans and specifications. It further indicates that the "abnormal" cracking developed over a weekend, when the central heating was first turned on, and during which temperatures inside the building rose to over 80°, and that such improper heating caused the cracks. It further indicates that the heating was done under the direction and control of Parker. These are the cracks that Ruane refused to repair, and that Parker had repaired by another subcontractor. The architect, or his representative, refused to accept the job until the cracks were repaired. Some of the foregoing evidence came in as part of Parker's case; some came in as rebuttal by Ruane. No objection was made to this procedure except that, in connection with the heating, on cross-examination of Parker, his counsel did object to one question on the ground that the matter was "beyond the issues in this case."

So far as appears from the transcript, counsel for Parker did not, either when Ruane rested or at any time thereafter during the trial, raise the contention on which he now relies, that Ruane pleaded performance but proved nonperformance plus an excuse therefor, and that a judgment supported by such pleading and proof cannot stand. (*Cf. Wyman* v. *Hooker*, 2 Cal.App. 36, 41 [83 P. 79].) He elected to stand upon two propositions: that the architect's demand that the leaching and splotches, and the cracks, be repaired, requires, as between Ruane and Parker, that Ruane do the repairs at his expense, regardless of the cause of the defects, and that the arbitration placed responsibility upon Ruane.

### The Contractual Relation of the Parties

The case before us requires a determination of the effect of the language of the subcontract whereby Ruane agrees to be bound by "the general conditions of the aforesaid specifications and all conditions" of the prime contract "insofar as they are applicable to this particular work." Of course these provisions are valid and binding on Ruane. (*Enochs* v. *Christie,* 137 Cal.App.2d Supp. 887 [291 P.2d 200]; *Gray* v. *Cotton,* 166 Cal. 130 [134 P. 1145]; *Trottier* v. *M. H. Golden Construction Co.,* 105 Cal.App.2d 511, 515-516 [233 P.2d 675].) The question is, what are the effects of these provisions?

Essentially, Parker takes the position that they mean that, as to the plastering, Ruane stands in Parker's shoes, for all purposes, vis-à-vis the county. This would mean that Ruane cannot recover if the architect's final certificate is withheld because of objection to the plastering work, regardless of who or what caused the defects therein. It also would mean that Ruane is bound by any arbitration between the county and Parker relating to the plastering even though the question of responsibility, as between Parker and Ruane, was not submitted to the arbitrators. We do not agree. We think that Parker's argument goes too far, and disregards the limiting language in the subcontract, that Ruane is bound by the prime contract "insofar as . . . applicable." Parker's position would put Ruane completely at the mercy of Parker and the county and its architect, any of whom could, under such an interpretation, cause or require him to redo what is in fact proper work, or pay for the doing of it by Parker, even if Ruane's work, after its proper completion, were to be damaged by Parker or by another of his subcontractors, or by agents of the county, or if the specifications themselves were defective.

Basically, what Ruane undertook to do was the lathing and plastering work called for by the prime contract, in accordance with the plans and specifications, which he did not prepare. In doing the work, he had to install the lathing and plastering in a building which he neither designed nor built; that work was to be done by Parker or by other subcontractors of Parker. Specifically Parker, not Ruane, was to heat the building in such a way as to protect rather than to damage Ruane's plaster. Parker scheduled the work of his subcontractors, including Ruane. Ruane did not warrant the adequacy or sufficiency of the specifications. Even an architect does not do that. (*Pancoast* v. *Russell,* 148 Cal.App.2d 909,

913 [307 P.2d 719]; and see *Atowich* v. *Zimmer*, 218 Cal. 763 [25 P.2d 6]; *Mannix* v. *Tryon*, 152 Cal. 31 [91 P. 983]; *Wyman* v. *Hooker, supra*, 2 Cal.App. 36, 39; *Simmons* v. *Firth*, 33 Cal.App. 187, 189-190 [164 P. 807]; *Roebling Const. Co.* v. *Doe Estate Co.*, 33 Cal.App. 397, 408 [165 P. 547].) Ruane would have breached his contract if he had concluded that they were inadequate and had undertaken, on his own responsibility, to disregard them for that reason. The subcontract provides that Ruane "shall not deviate from the said plans, specifications and details except on written order of the Contractor." It would be unreasonable to construe his obligation, which was also Parker's, under the specifications of the prime contract, to repair the plaster, as including an obligation to do that work at his own expense where the damage was caused either by inadequate plans and specifications (*Wyman* v. *Hooker, supra*, 2 Cal.App. 36, 39) or by Parker or one of his other subcontractors. On that question, the contract documents are silent.

It may be that a party can, by contract, place himself in such a position as Parker asserts, a question that we need not now consider. But we would be reluctant so to hold in any case where the language does not compel such a result. "A contract must receive such an interpretation as will make it . . . reasonable. . . ." (Civ. Code, § 1643.) "Particular clauses of a contract are subordinate to its general intent." (Civ. Code, § 1650.) "Stipulations which are necessary to make a contract reasonable . . . are implied. . . ." (Civ. Code, § 1655.) It is significant, we think, that Ruane relieved Parker from liability to him for delay, but not from any other liability, especially since the subcontract is on Parker's printed form. (*Cf.* Civ. Code, § 1654.)

The relationship of the architect to the prime contractor is different from his relationship to the subcontractor. As the representative of the owner, his responsibility is to see that the *building* is completed properly, in accordance with his plans and specifications. He can, therefore, reject any part of the work as not in accord therewith, but subject to arbitration. However, it is immaterial to him whether the defect was caused by the prime contractor or one or more subcontractors. He looks solely to the prime contractor for performance, since the contract documents make it clear that there is no contractual relationship between the owner and any subcontractor. It is not surprising, then, that nowhere in the contract documents is he given any authority or responsibility for

deciding disputes between a subcontractor and the prime contractor. That is not his function. It follows, we think, that arbitration between the prime contractor and the owner, as to a decision of the architect, does not determine such a question, absent an express agreement that it shall do so. Nothing in the contract documents provides for the arbitration of such a question.

Many cases in this state, none of which has been cited by counsel for either party, recognize that under contracts similar to those before us, a subcontractor can recover from the prime contractor for work properly done by the subcontractor, even though the prime contractor may not be able to recover from the owner because the latter or his architect has rejected the same work. The cases also recognize the differences that we have stated between the relationship of the owner's architect to the prime contractor and his relationship to the subcontractor. (*Mannix* v. *Tryon, supra,* 152 Cal. 31, 39-41 [plastering subcontract, plaster discolored, judgment for subcontractor affirmed]; *Lisher* v. *Fairbanks,* 70 Cal.App. 326 [233 P. 74]; *Frank T. Hickey, Inc.* v. *Los Angeles Jewish Community Council,* 128 Cal.App.2d 676, 683 [276 P.2d 52]; *Fielding & Shepley* v. *Dow,* 72 Cal.App.2d 18, 20 [163 P.2d 908]; *C. F. Bolster Co.* v. *J. C. Boespflug etc. Co.,* 167 Cal.App.2d 143 [334 P.2d 247].)

In the Mannix case, the court said, as to the subcontractor: "He did not agree generally to plaster the dwelling, which would leave to him the selection of the materials and the method of doing the work. His agreement was to do it in a way that the owner and the original contractor had designed; according to the specifications which they had agreed on. He had no discretion in the matter. When he followed strictly those specifications, used exactly the materials they called for in the composition of the mortar and hard finish, and applied them in a workmanlike manner, he did all his contract called for. He did not contract for results, but only to do the work in a specified way. If the usual result of white walls and ceilings did not follow, he was not responsible for it, unless there was some default on his part in furnishing the materials called for in the specifications or in doing the work with them. The court found, and the evidence fully sustained the finding, that the plaintiff had not been remiss in either particular. Under these circumstances, as he made no express warranty as to results, and plastered and hard-finished the rooms with the materials specified in the contract, and did the work

skillfully, he did all that he had contracted to do." (Pp. 40-41.)

### THE ARBITRATOR'S AWARD DID NOT BIND RUANE

██ The issue between Ruane and Parker was not submitted to the arbitrators although Ruane agreed to submit it. Parker deliberately withheld that submission. The arbitration was as to the responsibility as between Parker and the county for defects determined to exist by the architect. His determination would not fix responsibility as between Ruane and Parker. ██ Certification by a third person, such as the architect, as to performance or nonperformance by a party, as a binding determination, is limited to those matters, which, by the contract, are to be certified to. (*Brandenstein* v. *Jackling*, 99 Cal.App. 438, 444 [278 P. 880] ; *American-Hawaiian Eng. etc. Co.* v. *Butler*, 165 Cal. 497, 517-518 [133 P. 280, Ann. Cas. 1916C 44].) Such certification is not binding where the contract does not make it so. (*C. F. Bolster Co.* v. *J. C. Boespflug etc. Co.*, *supra*, 167 Cal.App.2d 143, 153; *Gray* v. *Cotton*, *supra*, 166 Cal. 130, 135-136, 138; *Kinkle* v. *Fruit Growers Supply Co.*, 63 Cal.App.2d 102, 108 [146 P.2d 8] ; *Vaughan* v. *County of Tulare*, 56 Cal.App. 261, 266 [205 P. 21].)

██ Referring to an architect's certificate as to certain delinquencies in a contractor's performance, the court said: "But, springing from the nature of such certificates, their power for weal or woe, and the fact that they contemplate forfeitures and the right of rescission, the terms of the certificates themselves are strictly construed." (*American-Hawaiian Eng. etc. Co.* v. *Butler, supra,* 165 Cal. 497, 512.)

██ The arbitration being as to a decision of the architect, which did not decide the question here involved, it follows that the arbitration decided nothing as between Ruane and Parker. ██ An arbitration award is not res judicata as to a person who is not a party to the arbitration, or as to a subject matter not submitted to the arbitrators. (*Pancoast* v. *Russell, supra,* 148 Cal.App.2d 909, 914.) ██ An arbitrator "has no legal right to decide issues not submitted to him." (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 184 [260 P.2d 156] ; and see *William B. Logan & Associates* v. *Monogram Precision Industries*, 184 Cal.App.2d 12, 17 [7 Cal.Rptr. 212].)

██ Of course, Ruane and Parker could have submitted the question between them to arbitration, and Ruane thought that they did, but Parker saw to it that Ruane's intention so

to do was frustrated. Under these circumstances he is in no position to ask us, as he does, to hold that the award binds Ruane.

### THE RULE OF PLEADING ON WHICH PARKER RELIES DOES NOT APPLY

Parker asserts that Ruane proved nonperformance, plus an excuse therefor, when he pleaded only performance. He does not claim that performance in accord with the plans and specifications was not shown, and in any event we think that such performance was shown. It seems that Ruane's statement that "the work . . . [has] been performed" is sufficient to make a prima facie case. (*Thomas Haverty Co.* v. *Jones*, 185 Cal. 285, 296-297 [197 P. 105].) If it was not, further evidence was produced to the same effect, by both parties, without objection as to the order of proof or as to who was doing the proving. What was proved, then, was performance, not nonperformance.

Parker relies on the rule that "a recovery on proof of excuse for nonperformance cannot be had on an allegation of full performance." (*Kirk* v. *Culley*, 202 Cal. 501, 506 [261 P. 994].) The cases in which the rule has been applied do not involve the question here presented, namely, a contention by a subcontractor that he has performed in full compliance with the plans and specifications, and a rejection of his work by the architect for defects that appeared in the subcontractor's work thereafter.[1] Parker asserts that his own satisfaction with Ruane's work, and the architect's approval of it, are condi-

---

[1]*Downs* v. *Atkinson*, 207 Cal. 259 [277 P. 723]: (Highway contractor took employee off highway job because state engineer objected to him. Employee was ready to perform at all times. The court did not apply the rule, but sustained recovery by the employee on a complaint alleging performance. Followed in *Payne* v. *Pathe Studio, Inc.*, 6 Cal.App.2d 136, 141 [44 P.2d 598], and *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 372 [210 P.2d 757]); *Kirk* v. *Culley*, 202 Cal. 501 [261 P. 994] (action for attorney's fees); *Krotzer* v. *Clark*, 178 Cal. 736 [174 P. 657] (contract to sell real property); *Herdal* v. *Sheehy*, 173 Cal. 163 [159 P. 422] (action by prime contractor against the owner); *Peek* v. *Steinberg*, 163 Cal. 127 [124 P. 834] (contract for employment); *Estate of Warner*, 158 Cal. 441 [111 P. 352] (antenuptial agreement); *Roche* v. *Baldwin*, 135 Cal. 522 [65 P. 459, 67 P. 903] (attorney's fees); *Owen* v. *Meade*, 104 Cal. 179 [37 P. 923] (attorney's fees); *Daley* v. *Russ*, 86 Cal. 114 [24 P. 867] (brokerage); *Rylee* v. *De Fini*, 134 Cal.App.2d Supp. 877 [285 P.2d 115] (brokerage); *Swanson* v. *Thurber*, 132 Cal. App.2d 171 [281 P.2d 642] (brokerage); *Martin* v. *Chernabaeff*, 124 Cal.App.2d 648 [269 P.2d 25] (brokerage); *Reininger* v. *Eldon Mfg. Co.*, 114 Cal.App.2d 240 [250 P.2d 4] (sale); *Ayoob* v. *Ayoob*, 74 Cal.App.2d 236 [168 P.2d 462] (antenuptial agreement); *Atkinson* v. *District Bond Co.*, 5 Cal. App.2d 738 [43 P.2d 867] (contract to buy street

tions precedent to Ruane's right to recover, that Ruane's own proof showed that Parker was not satisfied and that the architect rejected Ruane's work, requiring Parker to repair it before he would accept the job. Actually, it was Parker, not Ruane, who proved some of these facts, but they are not disputed by Ruane. Ruane's position, essentially, is that if he showed that he performed according to the specifications, he has proved his case.

■ Parker relies on the general rule that, where a contract requires that work be done to the satisfaction of the architect, to be evidenced by his certificate to that effect, the giving of such a certificate is a condition precedent to the contractor's right to recover. (*Coplew* v. *Durand*, 153 Cal. 278, 279 [95 P. 38, 16 L.R.A. N.S. 791]; *Ahlgren* v. *Walsh*, 173 Cal. 27, 31 [158 P. 748, Ann.Cas. 1918E 751]; *Tally* v. *Parsons*, 131 Cal. 516 [63 P. 833].) ■ But even in an action by the prime contractor against the owner, if the architect is satisfied with the work, and arbitrarily refuses to issue the certificates, "the necessity for the production of the certificate is dispensed with." (*Coplew* v. *Durand, supra*, 153 Cal. 278, 281; and *cf. Philbrook* v. *Mercantile Trust Co.*, 84 Cal.App. 187, 197 [257 P. 882]; *American-Hawaiian Eng. etc. Co.* v. *Butler, supra*, 165 Cal. 497, 515-516; *Simmons* v. *Firth, supra*, 33 Cal.App. 187.)

■ We think that the rule invoked does not require a reversal here, for a number of reasons:

*First:* It has been held that, where a plaintiff fails to plead a condition and the reason for its nonfulfillment, but this defect is supplied by the answer, there was a mere variance, which did not mislead the defendant, so that Code of Civil Procedure, section 469, applies. (*Antonelle* v. *Kennedy & Shaw Lumber Co.*, 140 Cal. 309, 320-321 [73 P. 966]; and see the annotations to section 469, in Deering's and West's Annotated Codes.) Here, the defect was not supplied by the answer, except as to the arbitration, but it was supplied by the proof, part of which came from Parker himself.

■ This is an application of the broader rule that, when a case is tried on the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, neither party can change this theory for purposes of review on appeal. (*Reid* v. *Overland*

bonds—dictum); *Barnhart* v. *Blackburn,* 137 Cal.App. 240 [30 P.2d 424] (exchange of properties); *Stehli Silks Corp.* v. *Director,* 86 Cal. App. 591 [261 P. 313] (sale); *McNulty* v. *New Richmond Land Co.*, 44 Cal.App. 744 [187 P. 97] (purchase of real property).

*Machined Products,* *(Cal.App.) 7 Cal.Rptr. 34, and cases there cited.)

 *Second:* It has been held that, where the plaintiff consistently claims that he has performed, and at no time admits nonperformance or claims an excuse therefor, the rule does not apply, even though the defendant attempts to show the latter. (*Mills* v. *Geo. A. Moore & Co.,* 39 Cal.App. 94, 96 [178 P. 304].) So, too, error in overruling a demurrer on the ground that the complaint of a contractor did not show either that the required certificate of an engineer was given, or that there was an excuse for its not being given, is not prejudicial when at the trial the facts are shown without objection. (*Simmons* v. *Firth, supra,* 33 Cal.App. 187, 189; Const., art. VI, § 4½; Code Civ. Proc., § 475.)

*Third:* The rule has not been applied to the satisfaction of the owner or architect in the case of building contracts or subcontracts. There is good reason for this.

 So far as the satisfaction of Parker is concerned, it has been repeatedly held that performance of a building contract which is satisfactory to a reasonable person is performance of the contract, even if the owner is in fact, not satisfied. (*Thomas Haverty Co.* v. *Jones, supra,* 185 Cal. 285, 296; *Scott Co., Inc.* v. *Rolkin,* 133 Cal.App. 209 [23 P.2d 1065]; *cf. Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875, 882 [306 P.2d 783]; *Mattei* v. *Hopper,* 51 Cal.2d 119, 123 [330 P.2d 625]; *Leboire* v. *Royce,* 53 Cal.2d 659, 672 [2 Cal.Rptr. 745, 349 P.2d 513]; *Tiffany* v. *Pacific Sewer Pipe Co.,* 180 Cal. 700, 702-704 [182 P. 428, 6 A.L.R. 1493].) Under such circumstances, pleading of performance is sufficient. The subcontractor need not plead that the prime contractor was or was not satisfied. (*Fielding & Shepley* v. *Dow, supra,* 72 Cal. App.2d 18, 21.)

This is in part because of the special nature of building contracts, under which the contractor's work becomes a part of the owner's real property, and is of such a character that it cannot be restored in case the owner rescinds, so that the owner retains the benefit of it. It is long-established law in this state that the contractor who pleads performance, need prove only substantial performance, defendant being allowed an offset for deficiencies in the work. (*Thomas Haverty Co.* v. *Jones, supra,* 185 Cal. 285, 289, and cases cited;

---

*A hearing was granted by the Supreme Court on September 27, 1960. The final opinion of that court is reported in 55 Cal.2d —— [10 Cal. Rptr. 819, 359 P.2d 251].

*Atowich* v. *Zimmer, supra,* 218 Cal. 763, 768-769.) As the court said in *J. Musto etc. Co.* v. *Pacific States Corp.,* 48 Cal. App. 452, 458 [192 P. 138] : "a substantial performance is performance." (See *Shell* v. *Schmidt,* 164 Cal.App.2d 350, 356 [330 P.2d 817] ; *Shumway* v. *Woolwine,* 84 Cal.App. 220, 223-224 [257 P. 898] ; *Brown* v. *Aguilar,* 202 Cal. 143, 147 [259 P. 735].)

It is also the rule that a condition that a third party shall take some action (such as action by the architect here) is to be construed against the party relying upon it, and will be held to be a covenant, rather than a condition, when the terms of the agreement can be so construed. (*Antonelle* v. *Kennedy & Shaw Lumber Co., supra,* 140 Cal. 309, 315-316, 318.) In the case before us, an architect's certificate is not unequivocally made a condition precedent to Ruane's right to recover, nor is it provided, as it often is in building contracts, that the architect's decision is final or conclusive. Moreover, if the defendant, by his own act, has prevented performance of a condition, he may not rely upon it. (*Ibid.,* p. 316 ; *cf. Lucy* v. *Davis,* 163 Cal. 611, 614-615 [126 P. 490] ; *Victoria S.S. Co.* v. *Western Assur. Co.,* 167 Cal. 348, 353 [139 P. 807] ; *San Diego Construction Co.* v. *Mannix,* 175 Cal. 548, 556 [166 P. 325] ; *Alpha Beta Food Markets* v. *Retail Clerks Union,* 45 Cal.2d 764, 771-772 [291 P.2d 433] ; *Wyman* v. *Hooker, supra,* 2 Cal.App. 36, 40; *Pacific Allied* v. *Century Steel Products,* 162 Cal.App.2d 70, 79-80 [327 P.2d 547].)

Where the plaintiff pleads performance, and proves substantial performance, including proof that the defects in his work were caused by the defendant, the rule that excuse for failure of performance must be pleaded does not apply. It was directly so held in the case of a plastering contract, in *Smith* v. *Mathews Construction Co.,* 179 Cal. 797, 800-801 [179 P. 205]. (See also *Conrad* v. *Foerst,* 54 Cal.App. 277 [201 P. 795] ; *Shumway* v. *Woolwine, supra,* 84 Cal.App. 220, 225.)

It has been held that in the case of a building contract, even the prime contractor may plead performance, although the architect's certificate was withheld, and may prove that the certificate was wrongfully withheld. See *Needham* v. *Sisters of Mercy,* 59 Cal.App. 341, 344-345 [210 P. 830], where the court said : "The rule is that an unreasonable, arbitrary or capricious refusal of the architect to give the certificate required by the contract excuses the contractor from producing such a certificate as a condition precedent to the recovery of

the payment due, and the allegation of due performance of all conditions on the part of the contractor is a sufficient allegation to put this matter in issue and to permit the contractor to offer evidence showing the reason the certificate had not been produced. The better practice, of course, is to allege the excuse for the failure to present the certificate, as in other cases of nonperformance. But the neglect to do so is not a sufficient ground for reversal when the trial of the issue has been had and a good and sufficient excuse has been proved." In so holding, the court relied upon *Antonelle, supra,* and upon *Wyman* v. *Hooker, supra,* 2 Cal.App. 36, 40. (*Cf. Philbrook* v. *Mercantile Trust Co., supra,* 84 Cal.App. 187, 197; *Simmons* v. *Firth, supra,* 33 Cal.App. 187.)

*Roebling Const. Co.* v. *Doe Estate Co., supra,* 33 Cal.App. 397, was an action by a contractor for the contract price of certain concrete work. The contract required a certificate of acceptance by the architect or a writing by the architect stating a just and true reason for not issuing a certificate, and stating the defects to be remedied. The complaint alleged full performance, and a refusal by the architect to certify. The court found that the contractor had fully performed, according to specifications. It also found that the materials used were inspected and approved by the architect, and that the work was done under his inspection and with his approval. (The letters put in evidence by Parker show the same things here, as to the stucco.) The concrete afterward checked and cracked. The court also found, in substance, that the defects were not the fault of the contractor, but were caused by improper specifications. There was no claim that the architect's certificate was withheld fraudulently, or in bad faith. In affirming a judgment for the contractor, the court said: "It seems to us that when the plaintiff agreed 'to furnish the necessary labor and materials, including tools, implements and appliances, required, and perform and complete in a workmanlike manner . . . all floors and roof slabs . . . and other works shown and described,' etc., its engagement was to do this, as the contract specifically provides, 'in conformity with the plans, drawings and specifications for the same made by Havens and Toepke, the authorized architects employed by the owner . . .' and 'under the direction and supervision and subject to the approval of said architects.' This interpretation, we think, is, as the contract provides, 'within a fair and equitable construction of the true intent and meaning of said plans and specifications.' Where, in the erection of a building,

the owner agrees to pay a certain sum for doing a certain part of the work, and specifically provides the kind of materials to be used, and the manner in which they are to be used and stands by and directs and afterward approves the work, the risk of its serving the purpose intended by the owner is clearly upon him.'' (Pp. 407-408.) The court further held that, the trial judge having found that the plaintiff performed according to plans and specifications, a further finding as to the cause of the defects that appeared was immaterial and unnecessary: ''We cannot see that it was essential to the finding of the court that plaintiff had fully performed its contract, to make a finding as to the improper portions of sand and cement in the mixture required by the specifications, as the cause of the defects in the floors. If, as we hold, plaintiff contracted only to furnish the materials and do the work in compliance with the plans and specifications and in good and workmanlike manner, the cause of the defects would be immaterial.'' (P. 409.) In reaching its conclusions, the court followed *City Street Imp. Co.* v. *City of Marysville,* 155 Cal. 419 [101 P. 308, 23 L.R.A. N.S. 317], and *Coplew* v. *Durand, supra,* 153 Cal. 278.

▮▮▮ The foregoing case, we think, is directly in point, as to the exterior stucco. As to the interior plaster, Ruane proved that he did the work according to the plans and specifications, i.e., that he performed, and that the damage and rejection by the architect were caused by Parker. Thus, again, Ruane proved performance, not nonperformance plus an excuse.

There is no contention that Parker was misled; no claim that he did not have ample opportunity to meet the issues as they actually developed at the trial; no suggestion that he might have been able to produce other evidence if Ruane's pleading had alleged what Parker says it should have. As to the exterior stucco, Parker elected to stand on the arbitration. As to both items he also stood upon the admitted fact that defects did appear after the work was done and upon rejection of the work by the architect. The appearance of the defects and the rejection by the architect were evidence of nonperformance, but were not, under the contract, conclusive as between these parties. For all of these reasons, and under the cited cases, we hold that the pleading and the proof were sufficient.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.